69

# UNITED·STATES·DISTRICT·COURT
## *Southern Division of* MICHIGAN *State*
### AT THE *Eastern* DISTRICT VENUE

ISAIAH STENARD ROBINSON, *independent*
*and of One's Own individual entitlement,*

Plaintiff - Petitioner ;

~vs~

Case: 2:25-cv-11090
Assigned To : White, Robert J.
Referral Judge: Altman, Kimberly G.
Assign. Date : 4/15/2025
Description: PRIS ROBINSON v
NESSEL ET AL (JP)

Mag. Judge

STATE BAR OF MICHIGAN: Dana M. Nessel d/b/a DANA M. NESSEL (P.51346);
Rick A. Prysock d/b/a RICK A. PRYSOCK (P.58900); Robert D. Springstead
d/b/a ROBERT D. SPRINGSTEAD (P.48639); and Anthony A. Monton d/b/a
ANTHONY A. MONTON (P.26051);

MICHIGAN DEPARTMENT OF CORRECTIONS: HEIDI WASHINGTON; MELISSA K.
JENNINGS; SONIA AMOS-NARCHOCK; EDWIN HEAP; MICHAEL BURGESS;
C. KING; DERWIN; JOHNSON; T. PAGE; D. MILLER; J. FAGER; CALKINS:
CHRISTOPHER; D.A. MOORE; GLINES; LO; REED; GOULET: A. STREIT;
CHAUVEZ; and ROBART, *individually* (as Resident Merchants of the
Michigan State) and *collectively* (as Executive and/or Administrative
operatives),

Defendant - Respondent ;

~vs~

ISAIAH STEWARD ROBINSON # 462832 (and any and all derivatives
or variations),

*Third Party Transferee / Alter-Ego / Undisclosed Principal.*

3

## NOTICE·OF·PREFATORY·CAVEAT·AND·PREEMPTORY·DISCLAIMER

As a preliminary matter to be regarded; the Litigant(s) hereinbelow undersigned are not subscribed to or in agreement with any pretention that the *Civil Rights Act of 1871* -- enacted to curb *Ku Klux Klan* activities in the Reconstruction South -- has any prospective application for deciding the merits of the instant action; having originated as a cognizable scheme for the protection of: "Black's", Union sympathizers, and federal workers, during such past Civil War era. See: *Kenyatta v. Moore*, 623 F.Supp. 227 (S.D. Miss. 1985); also: *Pierson v. Ray*, 386 U.S. 559; 87 S.Ct. 1221; 18 L.Ed.2d 298 (1967).

The principle and predicate, as stated, seek to challenge any applicability of 42 U.S.C. § 1983 (especially); upon the disingenuously conflicting and contradictory basis, that, (antecedently) "§ 1983 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions... under which people were being denied their civil rights.", See: *Pierson*, supra at 559, 559. Thus, (circumspectly): "A State acts by its legislative, its executive, or its judicial authorities..., by virtue of public position under State governments...; acts in the name and for the State... [are] that of the State." ... See: *Ex parte Virginia*, 100 U.S. 347; 25 L.Ed. 680 (1879), yet, to the contrary notwithstanding, and; (contemporarily): a "Plaintiff may not maintain a § 1983 action against the MDOC..., regardless of the form of relief requested; the states and their departments are immune under the Eleventh Amendment from

suit in federal courts; unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute"..., See: _Baker v. Dept. of Corr._, at 7 (W.D. Mich. 2013).

Under these circumstance, the present practices and concurrent judicial policy (-ies) -- i.e. said Civil Rights Act of 1871 -- must remarkably, if not necessarily and intentionally be expected to fall (prejudicially) short of adequately protecting the Suitors' inherent, substantial, and (of course) equitable rights; including but not limited to substantive property rights; whereas: "a private corporation [which is a state actor] is liable only when an official policy or custom of the corporation causes the alleged deprivation of federal rights". _Austin v. Paramount Parks, Inc._, 195 F.3d 715, 728 (4TH Cir. 1999) {Quoting from: _Page v. Kirby_, 314 F. Supp. 2d 622 (N.D. W. Va. 2004)}.

**Therefore** : It should not go without being noticed, that, the opinions held by more recent federal authorities -- such as alluded to directly above -- might easily be construed as clear circumvention and/or subversion of the very "Congressional purpose and intent" (purportedly) undergirding them; inasmuch as: "immunity is given to crime, and... courts are in many instances under the control of those who are wholly inimical to the impartial administration of law and equity"..., See: _Pierson_, supra at 559-560.

"Exception created in 28 U.S.C. § 959(a)... does not seek to deprive litigants against bankrupt entities from right... intended to permit actions redressing torts committed in furtherance of the bankrupt's business operations"... See: _Edgcomb Metals Co. v. Eastmet Corp._, 89 B.R. 546 (D. Md. 1988).

## STATEMENT OF INTERESTS AND CONSENT TO GRANT JURISDICTION

The *particulars* of these (ongoing) concerns are quickened *else* by transactions arising out of "presentment" (on April 14TH, 2016) at the 78TH JUDICIAL District, County of Newaygo, State of Michigan; the same which did result in a *surety* "BOND"[1] being entered *therein* said venue on the same day; which *ultimately* caused One to become subject to an "ADULT BIND OVER"[2] To the 27TH JUDICIAL Circuit, County of Newaygo, State of Michigan (on May 5TH, 2016).

Contingent upon the particulars of that <u>April 14, 2016 presentment</u> [MCL 440.3501 (1)]; <u>the said 27TH JUDICIAL CIRCUIT COURT (i.e. Bailor) issued its "MICHIGAN DEPARTMENT OF CORRECTIONS" (i.e. Bailee) a *mittimus*</u> -- in the bearer's registered form -- <u>regarded as the so-called "JUDGMENT OF SENTENCE COMMITMENT TO DEPARTMENT OF CORRECTIONS";</u> which (esoterically) **reckons to constitute a** (clandestine) **employment contract.**

Originally the party opponents "association" of (artisan) B.A.R. Attorneys -- and the jurisdiction of organization -- had offered to settle the "criminal" case at 24 months of incarceration in the MICHIGAN DEPARTMENT OF CORRECTIONS (MDOC); nevertheless that (May 21ST, 2016) "FELONY PLEA STATEMENT"[3] was rejected on grounds, that, "the judgment

entered..., and, the grant... based upon the validity of the pleaded release..., did not make clear to the trial court that execution of the pleaded instrument was fraudulently obtained." { See: _Paul v. Rotman_, 50 Mich. App. 465; 213 N.W. 2d 591 (1973)}.

In that "criminal" case; the trial court entertained a Motion To Dismiss (Vol. I, 46-63), and, acknowledged, that, "if there was no probable cause for arrest; the entire case would fail" (Vol. I, 46).

Therefore, as members of the State B.A.R., "whose business necessarily entails knowing, understanding, utilizing, and interpreting the law..., See: _Falk v. State Bar of Michigan_, 418 Mich. 297; 342 N.W. 2d 515 (1983); "if the agents knew, or reasonably should have known...; that knowledge is imputed to the principal"..., See: _United States Fidelity & Guaranty Co. v. Black_, 412 Mich. 126; 313 N.W. 2d 89 (1981).

"This leaves for consideration the constitutionality of this unbridled delegation of legislative power; in that the Attorney General is left without standards to determine when to admit bail and when to detain"... See: _Carlson v. Landon_, 342 U.S. 542; 72 S.Ct. 536; 9 L.Ed. 561 (1952).
"The Constitution was designed to provide the same currency; having a 'uniform' legal value in all the States...; power to regulate the value of money was conferred upon

the Federal government, while the same power, as well as the power to emit bills of credit, was withdrawn from the States. The States Cannot declare what shall be money, or regulate its value"...{See: <u>Norman v. Baltimore & O. R. Co., 294 U.S. 303; 55 S. Ct. 415; 79 L. Ed. 900 (1935)</u>}.

In the above-stated context: I, "Isaiah Steward Robinson" (Sui Juris Complaining Witness) d/b/a "ISAIAH STEWARD ROBINSON" (Ens Legis Complainant), collectively, as the undersigner(s) interchangeably convening this matter in the capacity of Third-Party-Interpleader; hereby intervenes pursuant to **28 U.S.C. 1331** and **Fed. Rules Civ. Proc. R 24(a)**, as accords with any "particular" way by which "references operate conjunctively to define the scope of jurisdiction", See: <u>Wood v. Wood (In re Wood), 825 F.2d 90 (5TH Cir. 1987)</u>, under **28 U.S.C. 1334(a)** and **Fed. Rules Civ. Proc. R 8 (a)**, respectively.

> "Let a Man so 'account' of us, as of the ministers of Christ, and 'stewards' of the mysteries of God'. Moreover, it is required in 'stewards' that a Man be found faithful. <u>But with Me it is a very small thing that I should be judged of You, or of Man's judgment</u>: <u>Yea, I judge not Mine own self. For ~~He that~~ judgeth Me is the Lord.</u>" {Reference: The Holy Bible, King James Version, The First Epistle of Paul The Apostle to the **Corinthians**, Chapter **4**, Verses **1-4**}.

Essential to understanding the nature and substance of this instant complaint is that: Complainant's Tradename was stolen and—by pretentious use of its commercial signature—the "person" [MCL 440.1201(2)(aa) and 26 U.S.C. §7701(a)(1)] is being surreptitiously exploited; to satify a confuted "letter-of-credit-right" [MCL 440.9102(1)(xx)] issued to an abstracted "offender" [Mich. Admin. Code R. 791.1101(e)], that is, in the name of a fictitious "prisoner" commonly being referred to as "Inmate Robinson #462832" and/or "Prisoner Robinson #462832."

"The English law of bankrupty, as it existed at the time of the adoption of the Constitution, was conceived wholly in the interest of the creditor, and, proceeded upon the assumption that the debtor was necessarily to be dealt with as an 'offender'..." See: Continental Illinois Nat'l Bank & Trust Co. v. Chicago R.I. & P.R. Co., 294 U.S. 668; 55 S.Ct. 604; 79 L.Ed. 1124 (1935).

These premises (among others) are herein and hereby alleged to evince unlawful conversions of the Complainant's property and [substantive] property rights; by and through an ad hoc procedural phantom, which the opposing parties misconstrue to unify this litigent's unincorporated proprietary trademark with a "Debtor" [28 U.S.C. §3002(4)] other than the undersigned Applicant and "Taxpayer" [26 U.S.C. §1313(b)]

Therefore, the Complaining Witness states to be among the principal

questions raised by these particulars are:

"Is the assumed name of the defendant corporation so similar to that of plaintiff as to mislead the public; so similar, in fact, as to mislead a person of ordinary intelligence to believe he was dealing with plaintiff; so similar in effect as to cause confusion, consequential in amount; and does the use of the name...by defendants result in unfair competition and loss to the plaintiff by reason thereof?" See: Schwannecke v. Genesee Coal & Ice Co., 262 Mich. 626; 247 N.W. 763 (1933)

In terms of particulars: The opposing parties -- and their "jurisdiction of organization", in privity, "pursuant to commitment" [MCL 440.9102(1)(nn)(ooo)] -- have managed to prevail against the estate of "MR. ROBINSON" on the basis of the arrestation and seizure being premised in violation of MCL 750.81(1); howbeit, to the contrary notwithstanding, no such offense was ever formally stated or charged on any instrument, necessary to bind the Complainant under public [insurance] policy schemes, supposing to condition the legality, i.e. Constitutionality, for said "arrest" on April 13TH, 2016. In fact, the record in that precipitating case will clearly show that no offense, whatsoever, has been alleged to particularize and/or characterize any cause for an "arrest".

**As stated,** the defendants' *association* of (artisan) B.A.R. Attorneys had offered to settle the "criminal" case at 24 months incarceration; nevertheless, when your plaintiff rejected the (May 21ST, 2016) offer, and continued to reason that *its* principal had been appropriated through such artifice as: *malice*, *fraud*, and other *corrupt conduct in office*, those artisan attorneys -- including but not limited to the insurer's agents: **Rick A. Prysock; Robert O. Springstead;** and **Anthony A. Monton** -- became accessories to a "kidnapping" [MCL 750.349(1)] "conspiracy" [MCL 750.157a (b)(d)] that led to the maximum sentence (permitted by law) being imposed, i.e 4 to 15 years incarceration to Michigan Department of Corrections; with the earliest date of "release" [MCL 440.1203(1)] being October 25TH, 2020.

After your plaintiff's principal had served its *minimum* sentence, the agents were unable to successfully negotiate any reciprocal identity of interest for ascertaining an interpretation of the principals' full agreement; which *ever* since resulted in the successive bombardments of "Continuance" by Executive Branch Parole Board Agency Members; including, but, not limited to *intermeddler(s)*: **Melissa Jennings; Sonia Amos Warchock;** and **Edwin Heap,** with others in privity of contract(s).

Three days following the said "*earliest release date*", that is, on the 28TH day in October of 2020: certain of the agents for principal(s) -- in the "State" political subdivision doing business as "COUNTY OF MACOMB", at the MDOC-MACOMB CORRECTIONAL FACILITY (MRF) -- caused a (10) -page "Security Agreement", to wit: a *private* "Indemnity Contract of Insurance", to be executed for the *release and discharge* (i.e. "parol")

of its (insured) principal; <u>as a charter with the executive</u> <u>body constituting: a full, complete, absolute, and final embodiment of all "agreement" and/or "contract"</u> [MCL 440.1201 (2)(c)(i)] <u>with One's "Debtor"</u> [28 U.S.C. § 3002(4)] <u>named for its "Taxpayer"</u> [26 U.S.C. § 1313(b)]; <u>to include any past, present, or future transactions.</u>

Accordingly, the said (executive) release and discharge was later "signed," and "authenticated" with such consent of the "COUNTY OF MACOMB" agency -- in the office of "Macomb County Clerk and Register of Deeds" -- on June 27TH, 2022; subsequently filed and recorded at the said 27TH Circuit, County of Newaygo, State of Michigan; and has been proffered as notice sent certified mail to: MDOC Executive Director and defendant: *Heidi Washington*; said MDOC Parole Board Agency Member and defendant: *Sonia Amos Warchock*; and, more recently copies were mailed by MDOC Disbursement Authorization (MDOC Form CAR-100) to Warehousemen: "*Michael Burgess*" (MDOC-ECF credit facility Warden) and Defendant: "*L. King*" (MDOC-LRF facility Warden); in addition to superfluous other notice, sent institutional mail or hand delivered.

In spite of ample and abundant effort -- in good faith [MCL 440. 1201(2)(t)] -- to answer and satisfy whatever legal burdens or obligations its principal may of incurred; defendant parties have continued to *negligently* and *tortiously* interfere with the performance(s) of this/your Plaintiff-Petitioner; via "Breach of Trust" [MCL 700.7901(1)], "Breach of Contract" [MCL 600.5807(1)], and "Unauthorized Signatures" [MCL 440.3403.et.seq], along with "Unfair Competition".

12

It seems *particularly* germane to this cause·of·action, that much emphasis be placed on scrutinizing MDOC "Prisoner Misconduct" practice(s). But, more specifically; the *persecutory effects of these* MDOC Forms "CSJ-228" and "CSJ-229" being *maliciously falsified to oppress this writer's: conscience, spirit, and psyche; via suppression that impedes exercise of protected conduct, and, his ability to mean- ingfully communicate the (immediate) threats, hazards, risk and other effects of corrupt and criminal abuse/neglect regularly occuring.* The same is quite conducive to "charging" these Debtor/Taxpayer account(s) of your Plaintiff-Petitioner; by passing such *implied* "misconduct charges" through the Cestui Que Trust -- for "investment security" under **MCL 440.8102** -- with the purpose of expanding funds as "public policy."

*Importantly, these "forms" of* **COMMERCIAL PAPER** (customarily referred to within the MDOC as "tickets") are being applied to secure "unusual indulges" to the MDOC Commercial Warehousing Enterprise, and, to *despot- ically* hold individuals -- including your Plaintiff-Petitioner -- against their will(s) in involuntary servitude; for reasons "inconsistent with the avowed purpose" of the mittimus order(s) issued by the judiciary, and, to refuse/deny "parole"; based upon these said "charges" for fabricated "misconducts"; "in derogation of the interior sense" of the (mortgage/bailment) transaction purported to warrant commitment.

*Further, the Plaintiff-Petitioner has been kept confined, isolated, and segregated* -- inhumanely under conditions *often* bordering on squalid and consistently retaliatory -- *for more than a year now with little hiatus; under this pretext of "prisoner misconduct" used to keep this writer in seclusion,* **WITHOUT DUE PROCESS**, to deter protected conduct.

13

In this present case -- for *now* more than (4) years after the dis·charge [MCL 600.6079(1)] and re·lease [MCL 440.1203(1)] has been (officially) commissioned by executive power and administrative authority -- the defendants' ("democratic") confederacy of professionals and attorneys has individually and collectively worked (remarkably) in tandem to: (a) "unlawfully confine and restrain' the *Ens Legis* Principal: "ISAIAH STEWARD ROBINSON"(i.e. an unincorporated proprietary trademark) with the intent that the 'person', to wit: victim, *Sui Juris* Agent: "Isaiah Steward Robinson"(i.e. the Secured Party Creditor and Proprietor), be held for security for the performance, or forbearance, of some act by a third person', namely, their Undisclosed Principal: "ISAIAH STEWARD ROBINSON #462832"(i.e. the alter·ego/nominee); and (b) to:"willfully, maliciously, and without legal authority, secretly confine and imprison 'the "persons" of your Suitor (by force) without the person's consent.'.. and, deprive 'him of any meaningful ability to (consistently)'communicate the predicament. **Having acted egregiously in concert to dishonor the October 28ᵀᴴ, 2020 Security Agreement**; through prejudicial, discriminatory, and retaliatory exclusions of the contract from any and all administrative processes, and, such decision making. { References taken from: *People v. Cousins*, 139 Mich. App. 583; 363 N.W.2d 285 (1984); and *People v. Jaffray, 445 Mich. 287; 519 N.W.2d 108 (1994)*}.


*Applicable Standards*


"The impossibility of the same person being both plaintiff and defendant in an action... often confers jurisdiction

in equity to enforce a demand of such a nature that the same person would be required to be joined both as plaintiff and as defendant"... {Quoting from: <u>Haylor v. Grigg-Hanna Lumber & Box Co.</u>, <u>287 Mich. 133</u>; <u>283 N.W. 4 (1938)</u>}. "The duty rest upon the agent, if he would avoid personal liability, to disclose his agency...; <u>as he always has it in his power to relieve himself from personal liability, by fully disclosing his principal, and contracting only in the latter's name</u>." {See: <u>Harmon v. Parker, 193 Mich. 546</u>; <u>160 N.W. 382 (1916)</u>}. "If at the time of a transaction conducted by an agent the other party thereto has notice that the agent is acting for a principal, and, the principal's identity, the principal is disclosed..." {See: <u>Dodge v. Blood, 299 Mich. 370</u>; <u>300 N.W. 124 (1941)</u>}.

Irrespective of any technical questions such as trademark; the defendants have no right to (whimsically) convert the goods, chattels, credits, and other personalty of this Complainant *"in such a manner as to deceive... for the patronage of the public...; in the extent of... employment of agents... by imitative devices..."* {See: <u>Schwannecke, supra at 628</u>}. <u>The determination of this case calls for examination of the principles applicable when remedies are sought for fraud·in·the·execution of a contract</u>, See: <u>Jack Mann Chevrolet Co. v. Assocs. Inv. Co., 125 F.2d. 782 (6ᵀᴴ Cir. Mich. 1942)</u>.

"*One corporation may not adopt a name so similar*

to that of another, as to draw to itself... business... for that other. _The correct principle is that where a corporation has, and has used, a name for such a length of time as to become identified by that name_; **it is a fraud** upon the corporation, and the public, if that name be assumed by others under such circumstances as to mislead the public into believing it is dealing with the original corporation, and; where injury will result to the corporation first adopting the name, on account thereof, a court... will enjoin the further perpetration of the wrong."... _Central Mut. Auto Ins. Co. v. Central Mut. Ins. Co._, 275 Mich. 559; 267 N.W. 735 (1936).

"**The rule as to unfair competition**, as recognized by our court, **is well stated** in _Schwannecke v. Genesee Coal & Ice Co._, 262 Mich. 624; where it said 'unfair competition ordinarily consist in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, and devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus; falsely inducing the purchase of his wares, and, thereby obtaining for himself the benefits properly belonging to his competitor." _Moon Bro, Inc. v. Moon_, 300 Mich. 162; 1 N.W.2d 494 (1942).

16

Between December 13, 2022. and. November 12ᵀᴴ, 2024: The (prisoner) *Cestui Que Trust* was "transferred" to more than (6) of the MDOC credit facility installations located through.out the MICHIGAN "State"; ending up (on the latter date) at the *current* "E.C. BROOKS CORRECTIONAL FACILITY (LRF)" -- after transfer from the "OAKS CORRECTIONAL FACILITY (ECF)" -- where defendants *now* contrive.in. concert to: "*Secretly confine*", *blatantly exploit*, *callously neglect*, and *vexatiously abuse* this writer for refusing to abandon the *Secured Party* covenant, and/or, forsake the oath of *Fidelity* to *his principal*; in exchange for purported benefits *forcibly* being imposed by *undue influence*.

Under the provisions codified at **9 U.S.C. § 8**: the Courts' jurisdict-ion to seize "*the vessel or other property*" held <u>**unlawfully**</u> by the "MICHIGAN DEPARTMENT OF CORRECTIONS" (MDOC), *Debtor.in Possession* **[11 U.S.C. 1101(1)]**, is express in the *Congressional intent* setting forth "*original jurisdiction, exclusive of the courts of the States, of any case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled...*"; as provided for under **28 U.S.C. § 1333(1)** and **Fed. Rules Civ. Proc. R 9.**

In addition, the Court is further empowered with authority to adjudicate claims against "*trustees, receivers or managers of any property... with respect to any of their acts or transactions in carrying on business connected with such property*"... in accord with **28 U.S.C. § 959**, et. seq, and **Fed. Rules Civ. Proc. R. 8(a)**; as provided for by **U.S. Const., Art. III** (sec(s). 1 and 2), respectively.

# PLAIN STATEMENT OF FACTS

**1)** On November 13TH, 2024: This undersigned Complaining Witness, "Isaiah Steward Robinson", stated the initial grievance, *verbally*, concerning dishonor of the [October 28TH, 2020] Security Agreement; upon quibbling with MDOC-LRF Custodial Sergeant: "*Derwin*" (hereinafter referred to as Defendant Derwin), about being unnecessarily moved from a Warehousing Unit D, Cell 91 bottom bunk, and assigned to a Warehousing Unit D, 24 top bunk.

**NOTE:** During the November 13TH colloquy with "Defendant Derwin" (involving increased health and safety concerns introduced by certain risk factors randomly created by the reassignment to a top bunk) this writer specifically made known to Defendant Derwin, that, the instant Complainant, "ISAIAH STEWARD ROBINSON", had entered a collateral contract with the STATE OF MICHIGAN executive branch -- to which all administrative and executive offices, agencies, and instrumentalities became bound by operation of law -- as a *bona-fide* agreement; *expressly releasing, indemnifying, and holding this undersigned Complaining Witness harmless from and against all past, present, and future claim(s) regarding the Debtors' estate.*

**2)** On November 14TH, 2024: This Complaining Witness made a subsequent [oral] grievance to the MDOC-LRF Classification Director: "Johnson" (hereinafter referred to as *Defendant Johnson*);

18

having personally offered -- which is to say *hand-delivered* to Defendant Johnson -- a copy of the Complainants' said Security Agreement; with respect to the (private) "Indemnity Contract of Insurance" embodied by the language carefully articulated within the October 28TH, 2020 deed and covenant at issue here.

NOTE: On that same November 14TH date, which Defendant Johnson had pretentiously scheduled for "classification" of "the prisoner", this writer spoke modestly -- asserting a respectful but emphatic tone with Defendant Johnson -- assaying to make clear the point that the estate of "MR. ROBINSON" would be required -- under the stipulated terms and conditions of the said collateral contract -- to ultimately decline all request that this Complaining Witness should subscribe to any MDOC executory contract(s), e.g. MDOC Forms: "CSJ-178"; "CAJ-1036"; and/or "CSX-175", respectively.

**Additionally:** A verbal caution -- for the purpose of [preemptively] advising Defendant Johnson to refrain from any unauthorized use of the Complainants' Tradename and/or Commercial Signature -- had been, then and there, stated; thereby speaking to Defendant Johnson explicitly in both the private/personal capacity, *i.e.* as a Resident Merchant of the MICHIGAN "State", and, in the public/official capacity, *i.e.* as a said MDOC-LRF Classification Director.

**Also,** it seems remarkable to note the importance of the "classification process being *heedlessly* undertaken by Defendant Johnson, without

this writer's express written consent, and, irrespective of being advised against use of the name; **as the same reckless and defiant conduct by Defendant Johnson relates germanely to facilitating the Banking Business operations of the MDOC,** in the context that said "classification" had been necessarily conducive to the ensuing actions and transactions of Co·Defendants with Defendant Johnson.

3) On November 18TH, 2024: This Complaining Witness prepared a formal MDOC Grievance (Form **"CHJ-247A"**), and, attached to it a copy of the predicate Security Agreement; having clearly indicated on the "depart·mental" form: "THIS GRIEVANCE IS NOW GOVERNED BY THE CONSTITUTIONAL TRUST CHARTER AND 10/28/2020 Agreements", and, the same clause was later stipulated to by the signature(s) of (both) MDOC Grievance Coordinator: T. Page (hereinafter referred to as "Defendant T. Page) and MDOC-LRF Deputy Warden: D. Miller (hereinafter referred to as "Defendant D. Miller".

**NOTE:** Copies of both the "CHJ-247A" grievance form and 10-Page Security Agreement were delivered to and received by "Acting Prisoner Counselor": Tyson, with a completed MDOC Disbursement Authorization (Form "CAR-100"); in the context of outgoing mail addressed for delivery -- by the U.S. Postal Service -- to the MDOC-LRF "War·Den" of Warehouseman: C. King (hereinafter referred to as "Defendant C. King").

Likewise, the requisite copies of that MDOC Grievance Form (dated for November 17TH, 2024), including the Security Agreement in support

thereof, were simultaneously sent -- that same 18TH day in November of the year 2024 -- to MDOC-LRF Grievance Coordinator (namely: Defendant T. Page); upon being deposited into an MDOC-LRF Warehousing Unit D. institutional mail receptacle

4) On November 20TH, 2024: This Complaining Witness was informed that he had a meeting in the MDOC-LRF facility Control Center; only to discover that said meeting had merely resulted in the LRF facility Administrative Assistant: J. Fager (hereinafter referred to as Defendant J. Fager) taking occasion to express the apparent MDOC-LRF opinion that Complainant's October 28TH, 2020 Security Agreement is "Horseshit that means nothing".

NOTE: <u>The MDOC-LRF "organizations" receipt of Complainant's grievance and "Notice of Claim" -- in the form of said Security Agreement that had been referenced therein and attached thereto -- was obviously "delivered" to and "received" by the Defendants' organization; having been reciprocally acknowledged by Defendant J. Fager during this writer's November 20TH meeting with Defendant J. Fager.</u>

As previously stated, the original copy of said grievance submission was also signed December 5TH, 2024 by Defendant T. Page , and, on December 6TH, 2024 by Defendant D. Miller; then later returned to this writer. {See Attached: MDOC "Prisoner/Parolee Grievance Form "CHJ-247A" (dated November 19TH, 2024), with "MDOC NOTICE TO PRISONERS RECEIVING A GRIEVANCE REJECTION - DRAFT CSJ-247RJ" and MDOC Grievance Rejection Letter"; totaling 3-pages}.

4

5) Between November 18TH, 2024 and November 20TH, 2024 -- at a date and time not otherwise ascertainable -- MDOC-LRF Custodial Officer: "Calkins" (hereinafter referred to as "Defendant Calkins") acted egregiously in concert with Custodial Officer: "Christopher" (hereinafter referred to as "Defendant Christopher"), and, Custodial Sergeant: "D.A. Moore" (hereinafter referred to as "Defendant D.A. Moore"); having falsified and forged counterfeit commercial instruments -- in the form(s) of a "MISCONDUCT REPORT" (MDOC Form "CSJ-228") and a "CLASS II and III MISCONDUCT HEARING REPORT" (MDOC Form "CSJ-229") -- without lawful authority; without the prior written consent of the under-signed; and, without affording the estate of "MR. ROBINSON" due process.

NOTE: It seems rather apparent, that, after this Complaining Witness had grieved Defendant Calkins, and, following the said November 20TH meeting with Defendant J. Fager; Defendant Calkins [then] retaliated by forging and falsifying the MDOC Form CSJ-228, charging that:

"inmate Robinson (462832)" had been in "violation of posted rule #20."

More precisely, it had been reported by Defendant Calkins, that, he:

"directly observed the locker belonging to the top bunk wide open and completely blocking... view of both inmates on their bunks. The top bunk area of control belongs to 'inmate Robinson (462832)."

22

It should be further noted, that, this writer's dialogue with Defendant Derwin -- on November 13, 2024 -- had largely been centered around giving frank explanations regarding certain medical conditions, and concerns, which precluded me from comfortably and sensibly acquiescing to the Cell 24 top bunk assignment; which was ultimately an explanation that had been guided towards being accommodated with a move to an administrative segregation cell in lieu thereof. Between the dates of December 29TH 2024 and January 3rd, 2025; I spoke with Defendant Derwin (on multiple occasions) about the fact that she had (repeatedly) stated the bottom bunk in Cell 24 would be the one assigned to my "prisoner", and that, to the contrary notwithstanding, the "tickets" written by Defendant Calkins were clearly not accurate.

**To Be Clear:** Defendant Derwin knew, and, Defendant Calkins both knew, and had been required to know; that at no time did this writer occupy the top bunk while in cell 24. From the time I was moved from 91 bottom to 24 bottom, the bunk I occupied had been the bottom; therefore both Defendant(s) Derwin and Calkins knew the locker referred to (in the misconduct(s) written) had been, and was being, used by "Mr. Curry".

Not only is retaliation evinced by Defendant Calkins manufacturing the feigned scenario with the locker; but Defendant(s): Christopher and D.A. Moore became complicit in the scheme to defraud the individual trust estate and collective public trust, by further

23

signing "*unauthorized signatures*" [MCL 440.3403(2)(3)] to reflect that the misconduct had been reviewed, and, a subsequent hearing was held, on November 18TH, 2024; when none of these instances collectively reported by the officers actually occured.

6) Between November 18TH, 2024 and November 28TH, 2024 -- at a time and date otherwise unascertainable -- Defendant Calkins (again) acted egregiously in concert with Custodial Sergeant: "Wakefield" (hereinafter referred to as "Defendant Wakefield"), and, Custodial Lieutenant: "Hill" (hereinafter referred to as "Defendant Hill"); when this writer was aggressively accosted by said Defendant Wakefield for the purpose of "reviewing" another "misconduct" UNLAWFULLY subscribed and issued by Defendant Calkins.

NOTE: In that second -- and seemingly duplicate-misconduct reported by Defendant Calkins; he states that:

"I directly observed the locker furthest from the doorway open and covered with clothes... This prevented... seeing either of the inmates... The top area of control belongs to Robinson and the locker was left open to prevent illumination of the inmates during rounds..."

At the time of "review", that is, when "presentment for acceptance"

of the **COMMERCIAL** instrument was offered by Defendant Wakefield; this writer refused to consider, and therefore rejected, the notion of settling such a claim; having expressly informed Defendant Wakefield that he, himself, was in possession of paper that was not only falsified, but, counterfeit and forged. Defendant Wakefield was then offered a copy of the predicate Security Agreement, so that it could be made a part of the record he was required to keep and maintain under "departmental" policy/procedure. When this writer went into cell 24 to retrieve the copy for Defendant Wakefield, he then immediately closed the door, and proceeded back towards the Warehousing Unit base.

**To Be Clear:** Complainant's October 28TH, 2020 Security Agreement -- by the operation of law -- devested MICHIGAN DEPARTMENT OF CORRECTIONS of any lawful authority to act in a representative capacity to the estate of "MR. ROBINSON", and, in particular precludes the Defendant(s) from enforcing any security interest(s) laying outside the scope of terms and conditions stipulated by execution and acknowledgment of the deed.

> " Therefore, brethren, we are 'debtors,' not to the flesh, to live after the flesh. For if ye live after the flesh ye shall die: but if ye through the Spirit do mortify the 'deeds' of the body, ye shall live. For as many as are led by the Spirit of God, they are the Sons of God." § Reference: The Holy Bible, King James Version, The Epistle of Paul The Apostle to the **Romans**, Chapter 8, Verses **12** through **14**.

25

7) Between the dates of November 13TH, 2024 and February 8TH, 2025 (respectively); cumulative security instruments have been *obviously falsified and forged* by multiple LRF Custodial and Administrative operatives (namely: Custodial Officers): "Glines"; "Lo"; and "Reed", Custodial Sergeant: "Goulet"; with Custodial Lieutenant(s): "A. Streit", "Chauvez", and "Robart"), other than the Defendant(s) previously implicated (above); having acted in concert to *conspicuously* **[MCL 440.1201(2)(j)]** stultify the October 28TH, 2020 "Security Agreement" **[MCL 440. 9102(1)(zzz) and 28 U.S.C. §3002(13)]**; *thus*, assign dates of loss to claims other than those on which they actually occurred.

**NOTE:** In addition to addressing these issues (of *false and forged* misconducts) with Defendant Derwin on several prior occasions; on January 2nd, 2025 these issues were brought to the attention of Defendant Goulet; Custodial Lieutenant: Moore (and others). Again on January 3rd, 2025 these concerns were made known to Defendant Derwin -- in the presence of Custodial Officer Messer -- and; it was at that time that Defendant Derwin made copies of the (former) instruments evinced, however, has never (apparently) taken further action to remedy her own negligence, and/or, investigate or cause the investigation of wrongdoing.

More recently, this writer attempted to seek verbal or other reprimand for the most recent falsification and forgery of a counterfeit security by Defendant "Lo"; by presenting evidence of the same before Defendant Goulet to no avail.

## CLAIMS AND AVERMENTS OF THE UNITED STATES PERSON

I. THE JANUARY 9TH, 2017 MITTIMUS WAS SUPERSEDED BY THE LATTER AGREEMENT AND CONTRACT OF THE REAL PARTIES; SIGNED, WITNESSED, AND SEALED BY THE EXECUTIVE ON OCTOBER 28TH, 2020.

*Applicable Authorities*

"An officer or agent of a private corporation, with... control of its business and affairs, has... authority to do acts or make any contracts in its behalf falling within the scope of the ordinary and usual business of the company; and limitations and restrictions placed upon his express or implied authority, of which persons dealing with him have neither actual or constructive notice, will not serve to restrict such powers to the prejudice of innocent third persons... In the instant case, the... executions of the acknowledgments were in the ordinary and usual business of the company; and... plaintiff was justified in assuming that defendant's officers were authorized to perform this particular act in behalf of the principal." {See: . Dimmitt & Owens Fin. v. Realtek Indus., 90 Mich. App. 434, 435; 280 N.W. 2d 831 (1979)} "Where a binding agreement is integrated; it supersedes inconsistent terms of prior agreements and previous negotiations to the extent that it is inconsistent with them... A prior course of performance cannot alter the clear and unambiguous language of the contract. Where the provisions of a contract are clear and unambiguous; the contract language is to be construed

according to its plain sense meaning". <u>Bank of the Commonwealth v. Criminal Justice Institute</u>, 102 Mich. App. 239, 244; 301 N.W. 2d 486 (1980). § Quoting from: <u>Ditzik v. Schaffer Lumber Co.,</u> 139 Mich. App. 88, 89; 360 N.W. 2d 881 (1984). See also: <u>Nag Enters. v. All State Indus.,</u> 407 Mich. 407, 410; 285 N.W. 2d 770 (1979)§ "It is the contention of the defendant that the contract is unenforceable because it is contrary to the public policy of this State... This case does not involve a contract which is contrary to a statute; but involves the enforcement of the <u>noncompetition</u> clause of a contract which falls exactly within the terms of the statute. § See: <u>Roland v. Kenzie, 11 Mich. App. 607, 608; 162 N.W. 2d 100 (1968)</u>. Also: <u>Papo v. Aglo Restaurants of San Jose, Inc., 149 Mich. App. 294; 386 N.W. 2d 182 (1986)</u>§ "<u>Public policy of a State is fixed by its Constitution, its statutory law, and the decisions of its courts; and when the legislature enacts a law within the limits of the Constitution, the enactment, insofar as it bears upon the matter of public policy, is conclusive</u>"... § Quoting from: <u>Lieberthal v. Glens Falls Indem. Co., 316 Mich. 40; 24 N.W. 2d 550 (1946)</u>.

## Standards Applicable

"MCL 566.1... provides that an agreement to change or modify 'any contract, obligation, or lease, or any mortgage or other security interest in personal or real property' shall not be invalidated because of an absence of consideration; where the modification agreement is in writing and signed by the party

against whom the modification is sought to be enforced. A written agreement, such as the present which is based on a contract involving real property, is governed by this statute. {*Omega Constr. Co. v. Murray*, 129 Mich. App. 515; 341 N.W.2d 539 (1983)}." Such is the case here. **MCLA 440.9503**... is simply a permissive statute...; decision to repossess was not compelled by the statute, it was made in reliance upon the terms of its security agreement, pursuant to the private right of contract"... {*Hill v. Michigan Nat'l Bank*, 58 Mich. App. 436; 228 N.W.2d 411 (1975)}. "Based upon the practicalities of the situation; it is quite clear that the plaintiff bargained for the reassignment provision to avoid being left in the undesirable position... Such a provision is clearly authorized by **MCLA 440.9501**... {*McBride v. Arends*, 79 Mich. App. 444; 263 N.W.2d 6 (1977)}.

## Discussion

Without further and unnecessary indulgence of fairytales and fantasy -- such as "legal fictions" and other *mythological* "creatures of law" purporting to be *holders* in this matter, Plaintiff herein claims and avers, that; the " MICHIGAN DEPARTMENT OF CORRECTIONS " (i.e. Bailee) breached the contract it had with the " NEWAYGO COUNTY 27TH CIRCUIT COURT " (i.e. Bailor), by failing to perform the services

29

it was employed to render, and, by performing services (that probably were rendered) in an inadequate manner. More specifically, that the implied warranty between the parties was breached; when the said MDOC Contractor contrived to secure superfluously "unusual indulgences", which, were -- and of course are -- clearly and unconscionably in derogation of the interior sense of the transaction; commercially unreasonable, and; remarkably undertaken in bad-faith.

The extent of "MR. ROBINSON's" involvement was that of the guarantor, and/or surety; in arranging representation by defendant(s) of the insured client (i.e. principal), and guaranteeing payment for those services, See: Alanta Int'l Ins. Co. v. Bell, 181 Mich. App. 276; 448 N.W.2d 806 (1989).

As such, "the presumption and consequent taxation are defended upon the theory that..., in order to prevent evasion of... taxes, 'A' may be required to submit to an exactment forbidden by the Constitution if it seems necessary, 'in order', to enable the 'State' readily to collect lawful charges against 'B'.", See: Baldwin v. Missouri, 281 U.S. 594; 50 S. Ct. 439; 74 L.Ed. 1061 (1930). Moreover, "It is true that when the Joint Resolution was adopted, on June 5, 1933..., the dollar had not yet been devalued. But devaluation was in prospect; and, a uniform currency was intended... In the currency thus provided, States and municipalities must receive their taxes...; their 'charges for services.'... Their receipts, in this view, would be fixed on one basis; their 'interest' charges, and, the 'principal' of their 'obligations on another'.", See: Norman v. Baltimore & O. R. Co.,

294 U.S. 314-315; 55 S. Ct. 419; 79 L. Ed. 906 (1935).

It, therefore, must follow that:

> "Whenever a party is convicted and sentenced, he
> is no longer in the custody of his bail, but is in
> the custody of the proper officer of the law; the
> bail is thereby discharged, by the operation of law,
> without a formal order to that effect"... {_People v.
> Brow_, 253 Mich. 142; 234 N.W. 118 (1931)}.

In the instant case: MDOC accepted the record (dated January 9TH, 2017) which signified rights, title, and interest in the _cestui que trust_ -- as well as the conveyance/transfer of personalty embodied thereby -- and later certified the same as being a "record regularly compiled and maintained in the normal course of business of the Michigan Department of Corrections". **[ See Attached:** Copy of **January 9TH, 2017 "JUDGMENT OF SENTENCE COMMITMENT TO DEPARTMENT OF CORRECTIONS"[5]**, certified by MDOC Office of Legal Affairs on October 14TH, 2019 **(3-pages)].**

The said "Judgment of Sentence", regarded as a _"binding 'commitment' to extend credit or for the extention of immediately available credit",_ See: _Pittsburgh Tube Co. v. Tri-Bend, Inc._, 185 Mich. App. 586; 463 N.W.2d 165 (1990), simply stated; does not agree to dis·charge any, other, obligation not stated on the face of that record (e.g. "Prisoner Misconduct" charges and "Parole Board Recommendations"). Furthermore, this

31

Plaintiff avers, that the January 10TH, 2017 "**OFFENDER FINANCIAL STATUS REPORT**"[6] (MDOC Form "CAJ-140") was signed under duress, caused by coercion and other undue influence; making its contract(s) unenforceable, as "adhesion contracts" being outside the scope of any terms and/or conditions contingent upon the said Taxpayer's "earliest release date" [**MCL 440. 1203(1)**].

### Authorities

"The earliest case involving the exercise of equitable jurisdiction over a mortgage of real estate dates from the 13TH century; where... the creditor fraudulently contrived to procure the imprisonment of the debtor to prevent his redeeming the property pledged... The basis... was the fundamental maxim that equity looks at intent, rather than form; and the resulting general principle that equity could, and should, relieve against legal penalties and forfeitures; when the person in whose behalf they were enforced could be fairly and sufficiently compensated by an award of money"... ¿Union Guardian Trust Co. v. Building Sec. Corp., 280 Mich. 160, 161; 273 N.W. 432 (1937)¿ "As with a mortgage, so with a pledge; the creditor may, upon default, pursue any or all of his several remedies. The remedies upon a pledge are also similar to those upon a chattel mortgage. They are: **1)** by action upon the debt

32

secured; **2)** by sale of the pledge, at common law, without judicial proceedings; **3)** by sale under statutory provisions; **4)** by sale under a decree of a court of chancery; **5)** by sale under a special power of sale." {*Clark v. Chapman*, 215 Mich. 526; 184 N.W. 500 (1921)} "The case involved successive appearances in circuit court. Plaintiff argues that this... agreement *insured* appearances until a final disposition of the matter, sentencing, but could not be construed to insure appearances, after sentencing, without the surety's consent." {*Brandimore v. Eaton Rapids Justice of Peace*, 15 Mich. App. 682; 167 N.W.2d 364 (1969)} "The term 'adhesion contract' refers to standardized contract forms, offered to consumers of goods and services on essentially a 'take it or leave it' basis; without affording the consumer a realistic opportunity to bargain, and, under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract. **The distinctive feature is that the weaker party has no realistic choice as to its terms**"... {*Brown v. Siang*, 107 Mich. App. 106; 309 N.W.2d 582 (1981)} "The mortgagor may release the equity of redemption to the mortgagee, for a good and valuable consideration; when done voluntarily, and, *there is no fraud, and no undue influence brought to bear upon him*

for that purpose by the creditor. But it cannot be done by contemporaneous or subsequent executory contract; without an abandonment by the court of those equitable principles it has ever acted on in relieving against *penalties* and *forfeitures.*".. {*Batty v. Snook,* 5 Mich. 240 (1858)}." **The principle is well settled, that**; where one by deed poll grants..., and conveys any right, title, or interest... to another, and, where there is any money to be paid by the grantee to the grantor, or any other debt or duty to be performed by the grantee to the grantor, or for his use and benefit, and the grantee accepts the deed and enters on the estate; the grantee becomes bound to make such payment, or perform such duty, and, not having sealed the instrument he is not bound by it as a deed, but, it being a duty the law implies a promise to perform it; **upon which promise, in case of failure assumpsit will lie**"...{*Schram v. Coyne,* 127 F.2d 208 (6TH Cir. Mich. 1942)}; See Also: *Gage v. Jenkinson,* 58 Mich. 172; 24 N.W. 818 (1885)}." The intent of the parties at the time the agreement was made, as gathered from the entire instrument, controls despite literal terms in derogation of the interior sense of the transaction"...{*Union Guardian Trust Co.,* supra at 153, 156}." One of the surest test of a fraud-ulent conveyance is that *it reserves to the grantor an*

advantage inconsistent with its avowed purpose, or secures for him an unusual indulgence." {Bentley v. Caille, 289 Mich. 78; 286 N.W. 165 (1939)}.

In short, the Plaintiff here relies similarly on this contention that: "assignment of his mortgage was part of a bulk transaction not in the regular course of business; therefore the MDOC cannot be a holder in due course, See: Barbour v. Handlos Real Estate & Bldg. Corp., 152 Mich. App. 190-191; 393 N.W.2d (1986). Even so, it may as well go without saying, that, "rights of assignee of accounts receivable are subject to defenses arising out of debtor's contract with assignor; unless debtor has made enforceable agreement to waive defenses against assignor...", See: Dimmitt & Owens, supra.

Thus, it can only be deduced that: In in addition to breach of duty by the MDOC - "Debtor-in-Possession" [MCL 440.5102(1)(o) 11 U.S.C. §1101(1)], which "consist of failure to give any adequate consideration to the settlement prospect", See: Peter v. Travelers, Inc. Co., 375 F. Supp. 1349 (C. Dist. Cal. 1974); the subsequent stultification of plaintiff's ensuing security agreement evinces "a breach of greater proportion" by the individual defendant(s) named in this instant cause of action.

It shall neither go without saying that: The plain intent of the October 28TH, 2020 Security Agreement had purposed the purchase of a bond that should have placed "MR. ROBINSON" back in his

shoes as creditor ; so as to be no longer at the _whimsical dictates_ of an executive branch, MDOC, "_Parole Board Agency_", and/or, the malevolently _unscrupulous mercies of vindictive_ "officers, agents, and instrumentalities" of the "State" executive branch, See: _Schram, supra at 207._

## Authorities

"One vehicle for affording relief has been the doctrine of equitable subrogation...; **best understood as allowing a wronged party to stand in the place of the client**... In this case..., conditions... thus can succeed to the rights of the client...; plaintiff contends that... interests... of the trustee were merged with regard to recovery of... insurance policy proceeds, that is, the parties shared an interest in maximizing the assets of the _bankruptcy estate_"... _Beaty v. Hertzberg & Golden, P.C._ 456 Mich. 255; 571 N.W.2d 721 (1997). "**There is also what is known as conventional subrogation**. It arises from an agreement between the debtor and a third person; whereby the latter, in consideration that the security of the creditor and all his rights thereunder be vested in him, agrees to make payment of the debt in order to relieve the debtor"... _Machined Parts Corp. v. Schneider,_ 289 Mich. 574; 286 N.W. 835 (1939). "**Fact that parties considered it to their advantage to modify their agreement is sufficient consideration...;**

no other consideration is necessary." _Adell Broad._
_Corp. v. Apex Media Sales, Inc., 269 Mich. App. 6;_
_708 N.W. 2d 778 (2005)._

"These facts present a case of 'parol' contract, partly performed,
about as strong as it can be made... in writing...; while there can
be no question about its legal or equitable effect between the
parties thereto'..., See: _Gage, supra at 174._" These agreements are
**tied together by mutual default clauses, and, by the fact that**
**they do arise from the same transaction.** These facts do not
establish that only one contract was contemplated and executed...;
the documents presented are separate and distinct contracts..., **to**
**conclude otherwise would violate the clear written intent of**
**the parties"..., See:** _McBride, supra at 443-444._

It is clear, in this case, "the State did not exert any control or
complusion" over the _Plaintiff's_ repossession of collateral...; "the
private activity was not commanded by the simply permissive
statute... to reduce a creditor's risk in making repossessions. As
a practical matter..."; Plaintiff-creditor's decision is principally
influenced by economics..., upon the terms of its security agree-
ment pursuant to the private right of contract'..., See: _Hill, supra_
_at 436._ Accordingly, the parties intended to, and did in fact,
enter into two separate agreements in effectuating the subsequent
promissory note and security agreement."... See: _McBride, supra._
**"A contract cannot be implied, in law, while an express contract**
**covering the same subject matter is in force,"** See: _Steele v. Cold Heading_
_Co., 125 Mich. App. 199; 336 N.W. 2d 1 (1983)._

The "State" executive branch gave the plaintiff its (valuable) rights to collateral -- which were in agreement to transfer (i.e. reassign) the same to the (here-in-below) undersigned Secured Party; said "gift from the executive..., like any other gift... delivered and accepted..., cannot be recalled. So in the instant case...; delivery and acceptance of the discharge...was beyond the power... to revoke."... See: People v. Young, 220 Mich. App. 428-429; 559 N.W. 2d 674 (1996).

The document (on its face) -- page "1 of 10", enumeration "3.", under "AGREEMENT" and; page "6 of 10" under "ADVISORY" -- clearly indicates value has been given and accepted (including but not limited to a "binding commitment to extend credit or for the extention of immediately available credit"); with express language reciprocating that the said "Security Agreement supersedes all previous contracts or security agreements." By these mutually assented terms and conditions, later recorded with the "COUNTY OF MACOMB" agent, then, filed at the "NEWAYGO COUNTY 27TH CIRCUIT COURT" agency (purported to have had original jurisdiction in the matter); since as early as June 27TH, 2022, respectively, defendants were precluded from enforcing any security interest "that might influence, affect, pertain to, or be presumed to pertain to Secured Party, in any manner..., without the written consent of Secured Party."... {Reference: October 28TH, 2020 Security Agreement", page "1 of 10", under "PUBLIC LAWFUL NOTICE", at enumeration "1." through "4."}. See: Pittsburgh, supra at 585, 586.

It had been, in effect, the equitable right and custom to grant a prisoners "parol" that's among those "paid for and parted with" when "contracts for purchase of the bonds were completed"...

Defendants were and are required to know the scope and nature of "all executive and administrative... functions, powers, and duties"... which they had been "allocated by law among and within... principal departments"...; as the same knowledge bears upon their individual oath(s) taken, and subscribed, "before entering upon the duties of their respective offices"... to "faithfully discharge the duties of the office"... [Reference: Mich. Const. 1963, Art. V, § 2, Art. X, § 1; and U.S. Const., Art. IV, VI, respectively].

Although the terms and conditions set forth in the mittimus were nebulously vague; the clauses setting forth terms and conditions stipulated by the latter contract -- which is to say the parties October 28TH, 2020 agreement -- were unarguably "conspicuous"; such that "a reasonable person against whom it is to operate ought to have noticed"..., See: Latimer v. William Mueller & Son, Inc., 149 Mich. App. 620; 386 N.W. 2d 618 (1986). Even so; the "contours of those rights", secured in the parties said agreement and contract, were made so "sufficiently clear that a reasonable official would understand that what he is doing violates that right"..., See: Ricks v. Pauch, 322 F. Supp. 3d. 822 (E.D. Mich. 2018). Simply stated: It was never incumbent upon this Plaintiff to dictated the boundries of these written covenants; only to provide the Defendant(s) with notice of its existence.

39

**II.** THE WRITTEN NOTICE OF PLAINTIFF'S REPOSSESSION OF COLLATERAL AND REASSIGNMENT OF ITS MORTGAGE IS SUFFICIENT TO IMPOSE LIABILITY AND CULPABILITY UPON DEFENDANTS FOR STULTIFICATION THEREOF.

## Applicable Authorities

"Notice under the UCC has been defined in **MCL 440.1201** ... A person 'receives' a notice or notification when, (a): It comes to his attention; or (b): It is duly delivered at the place of business through which the contract was made, or at any other place held out by him as the place for receipt of such communication. Notice, knowledge, or a notice or notification received by an organization is effective for a particular transaction...in any event, from the time it would have been brought to...attention if the organization had exercised due diligence ... Due diligence does not require an individual...to communicate information; unless... he has reason to know of the transaction, and, that the transaction would be *materially* affected by the information." Old Kent Bank - Southeast v. Detroit, 178 Mich. App. 422; 444 N.W.2d 166 (1989); Also: Zuhellier v. Bolline Constr., Inc., 157 Mich. App. 134-135; 403 N.W.2d 525 (1987), and: Barbour, supra at 186." **12 USC 86a** provides...; the term 'organization' means a corporation, government or governmental subdivision or agency, trust, estate, partnership, cooperative, association, or other entity; and... 'Associations' are defined in **12 USC 37** as 'associations organized to carry on the business of banking under any act of Congress'...

The plain language of the statute indicates that it applies to loans made by a person." _Omega, supra at 512-513_. Michigan applies this doctrine: "if no contractual relationship exist...; material representations which... are relied upon and cause damage, and the loss inures to the benefit of the representing party; there is a cause of action for fraud and deceit, regardless of whether the party making the representations knew them to be false... **The rationale is that**... a person in privity of contract... is under a legal obligation to determine its truthfulness prior to making the representation."... _Strand v. Zibrascope, Inc., 197 F. Supp. 745 (E.D. Mich. 1961)_. "Generally, the 'location' of the debtor governs the filing location under Revised Article 9... For registered entities organized under state law, the proper filing location is the entity's state of organization... **In this case, the proper filing location is Michigan**." _Swanson v. M&I Marshall (In re Vission, Inc.), 400 B.R. 219 (Bankr. Wis. 2008)_. "A security agreement is generally effective according to its terms, both between the parties and against subsequent purchasers of the collateral. **MCLA 440.9201**... Because plaintiff's security agreement was properly perfected by filing; defendant... is presumed to have had notice of it, and..., is subject to the provisions of the security agreement... _Gorham v. Denha_, 77 Mich. App. 269; 258 N.W.2d 200 (1977).

## Standards Applicable

"A surety bond, for the purpose of assuring that a criminal defendant will appear at later proceed-

41

ings; is a contract between the government, and, the principal and surety". _People v. Woodall_, 85 Mich. App. 514 (hn. 2); 271 N.W. 2d 298 (1978). "It is a promise made by the surety, that, if the principal defaults the surety will pay the judgment on the bond". _People v. Johnson_, 72 Mich. App. 708; 250 N.W. 2d 512 (1976). "The law upon this subject seems to be the reserved per cent to be withheld until the completion of the work to be done... Equitably, therefore, the sureties in such cases are entitled to have the sum agreed upon held as a fund out of which they may be indemnified and, if the principal releases it without their consent it discharges them from their undertaking". _Pearlman v. Reliance Ins. Co._, 371 U.S. 138; 83 S.Ct. 236; L.Ed. 2d 195 (1962). "The Michigan Supreme Court, reasoning that the judgment of sentence constituted the final determination of a criminal case, held...; that the surety's liability terminated when sentence was imposed, and..., is the final disposition of an insured's case which terminates the surety's legal obligations"... _United States v. D'Anna_, 487 F.2d 901 (6TH Cir. Mich. 1973). "However, the... liability insurance policies typically include provisions that both obligate the insurer to provide the insured with a defense, and, entitle the insurer to control

the defense...; *the insurer has both a 'duty' and a "right" in regard to the defense of the insured... Courts also tend to favor subrogation if it appears that a third party tortfeasor would be likely to escape financial responsibility if the insurer were not accorded a subrogation right. Thus, subrogation often is appropriately viewed as an important technique for serving the ends of justice; by placing the economic responsibility on the party whose fault caused the loss*"... <u>Alanta Int'l Ins. Co. v. Bell</u>, 438 Mich. 519, 523 (fn. 13); 475 N.W.2d 298 (1991). "When there is no excess insurer, the insured becomes his own excess insurer, and; his single primary insurer owes him a duty of good faith in protecting him from an excess judgment and personal liability." <u>Valentine v. Aetna Ins. Co.</u>, 564 F.2d 297 (9TH Cir. N.D. Cal. 1977), See Also: <u>Commercial Union Ins. Co. v. Medical Protective Co.</u>, 426 Mich. 118; 393 N.W.2d 483 (1986).

## Discussion

Speaking in practical, if peradventure, unconventional terms: The instant plaintiff's **[October 28TH, 2020]** Security Agreement is tantamount to a self executed "parol", to wit, "It is a remission of the remaining portion, i.e. the balance, of a **[January**

9TH, 2017] "Judgment of Sentence"; evidencing that the *necessary* tender for the prisoner's "absolute discharge" -- as of June 27TH, 2022 -- has been proffered. See: *In re Eddinger*, 236 Mich. 670; 211 N.W. 55 (1926), also: *People v. Young, 220 Mich.App., supra at 428-429.*

Irrespective of the execution and delivery of the *mittimus* "pursuant to commitment" [MCL 440.9102 (1)(000)]; Plaintiff was never divested of its ownership (i.e. possession and benefit) right regarding the estate. See: *Dougherty v. Randall*, 3 Mich. 586 (1855); also: *Bennos v. Waderlow*, 291 Mich. 599-600; 289 N.W. 270 (1939).

Alternatively stated: Michigan Department of Corrections" is not a *bona fide* purchaser, and, there is no rule of law which exempts a general assignment from the consequences of *actual fraud...* to hinder, delay, or defraud creditors"... See: *Farrington v. Sexton*, 43 Mich. 456-457; 5 N.W. 656 (1880), also: *Bentley, supra*, and: *Fed. Refinance Co. v. Klock*, 352 F.2d 23 (1ST Cir. COA Mass. 2003).

Therefore: At which time the MDOC - "Parole Board Agency" failed, neglected, or simply refused to settle -- on or about "the prisoners" October 25TH, 2020 "earliest re-lease date"; Plaintiff undertook to re-lease and dis-charge the account(s) by executing a private "parol" contract with the "State" executive branch, to wit: a promissory note in the form of a "FIDELITY BOND" purchased in favor of the undersigned Beneficiary-in-Common. The same *must* unequivocally evince re-possession; via reassignment of the premise(s).

44

## Authorities

"In natural justice, and equity, the principal right of the mortgagee is to the money when due; and his right... is only as security for the payment of the money; the debt being merely collaterally secured by the mortgage... **As to the manner of transferring a mortgagee's interest in a mortgage, very little need be said.** It is now generally held, that; an assignment of the debt carries with it, in equity, the interest in the mortgage...; a mere 'parol' transfer of the debt and mortgage is valid...; a 'parol' assignment of the debt carries with it the mortgagee's interest in the mortgage. **In this state...**, no doubt could exist as to the competency of the assignment; **as proof to show that the entire interest of the mortgagee**, in debt and security, **had been transferred to himself.**" _Dougherty, supra at 587, 588._ "The Michigan third party beneficiary statute, **MCL 600.1405**... recognizes 'any person for whose benefit a promise is made, by way of contract, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee...; plaintiff was entitled to enforce the assumption of the... debt... _Detroit Pure Milk Co. v. Farnsworth, 114_

Mich. App. 451; 319 N.W. 2d 559 (1981). "Any cause of action which the excess insurer has against the primary; must come by way of equitable subrogation."... *Peter, supra at 1350.* "Numerous courts allow an excess insurer to maintain an action against a primary insurer; for bad-faith failure to defend or settle within the latter's policy limits, on the basis of the theory of equitable subrogation"... *Commercial Union Ins. Co., supra at 118.* Furthermore, policy considerations pertinent to both the courts, and, the insurance industry; favor allowing an excess insurer to enforce a primary insurer's duty to the insured... As ... reasoned ...; when a primary insurer breaches its good-faith duty to settle within policy limits it imperils the public and judicial interests in fair and reasonable settlement of lawsuits"... *Valentine, supra.* "The argument against it does not rest upon the mere fact that the legislation may cause hardship or loss. Creditors who have not stipulated... may suffer equal hardship or loss with creditors who have so stipulated. The former, admittedly, have no constitutional grievance. And, while the latter may not suffer more, the point is pressed that their express stipulations... constitute property; and, creditor's who have not such stipulations are

without that property right"... _Norman, supra at_ 307. "Assignment rights are independent of those derived from equitable subrogation... The surety's priority is well established in common law, and, was not adversely affected by the adoption of the UCC"... _Old Kent Bank, supra at 421._ "Sureties and guarantors are not to be made liable beyond the express terms of their engagements. They have the right to prescribe the terms and conditions on which they will assume responsibility; and, neither of the principals can change those terms without the consent of the sureties, even with a view to avoid ultimate liability"... _Finney v. Condon, 86 Ill. 81 (1877)._ "Defendant will not be permitted to derogate from his own assignment... **There was an implied covenant on the sale of the good will of the business... custom which was paid for and parted with.** It was a fraud to sell that which he did not mean the purchaser to have; to pocket the paid price, and, attempt to recapture the thing sold..., or call it back..., before plaintiff had time to make it his own"... _Roland, supra at 609-610._ **"After delivery it cannot be recalled...; if there was a delivery and accept- ance of the discharge, it was beyond... power to revoke it".**.. _In re Eddinger, supra_; and _Young, 220, supra_.

47

Plaintiff's contention is that; execution and notice of the (now) predicate "agreement" and "contract" has extinguished whatever identity of interest there may have been between, the Plaintiff-Corporation: "ISAIAH STEWARD ROBINSON", and, the Defendant(s) Alter·Ego/Nominated Person/Transferee: "ISAIAH STEWARD ROBINSON #462832", and; it thus must follow that; the payment of "overhead and profit" for services purported to be rendered by the defendants' association, "through its alter·ego for services rendered" -- but never agreed to -- amounts to improper remuneration [MCL 449.18(5)]"... See: Nogueras v. Maisel & Associates, 142 Mich. App. 86; 369 N.W.2d 499 (1985).

"It has been very correctly said, that, the principle in these cases is this: no man has the right to sell his own goods as the goods of another...; dress himself in colours, or adopt and bear symbols, to which he has no peculiar or exclusive right, and; thereby personate another person for the purpose of inducing the public to suppose, either, that he is that other person, or, that he is connected with... selling... such other person; while he is really selling his own. It is perfectly manifest, that, to do these things is to commit fraud, and, a very gross fraud... One may dispose of the right to use his name in connection with a certain business, he may so circumscribe himself as to be estopped from claiming the right to use it in that business; but generally speaking, one has the right to use his

48

own name... <u>Young & Chaffee Furniture Co. v. Chaffee Bros. Furniture Co.</u>, 204 Mich. 297, 298; <u>170 N.W. 50 (1918)</u>.

To the extent the *interpleaded funds* are determined to be property or rights to property belonging to "the prisoner"; the parties October 29TH, 2020 Security Agreement -- being a cognizable lien against said Debtor-Taxpayer -- " takes priority over and attaches to any funds due... for work performed...; because... the alter.ego and/or nominee."... of Department of Corrections is "a sham trust devoid of economic reality"...; the private settlement contract properly arose to "attach to all property, and rights to property owned... and thereafter acquired... to levy upon"... <u>Diversified Metal Prods. v. T-Bow Co. Trust</u> (U.S. Dist. Idaho 1996).

Practically and conventionally stated: The term *"parol"* -- used in its basic sense of a *"parol contract"*; literally means:

(i) *A contract or modification of a contract that is not in writing or is only partially in writing;*

(ii) *At common law, a contract not under seal, although it could be in writing;*

hense the customarily used synonym: *"release"* (i.e. re.lease); signifying a *re.negotiation* of the original contract; *in this case*: the *mittimus*, i.e. an agreement to contract (again).

Circumspectly, "the purpose of parole is... a conditional release; the condition being that... he makes good'... an absolute discharge from the 'balance' of his sentence"... See: *Eddinger*, *supra at 670*; also: *Young, 220 Mich. App., supra*. Cf. *Johnson, supra*. 'The right of an embarassed debtor to make an assignment, and, select his own assignee, without and against the consent of his creditors, has finally been admitted in most States of the Union; though the propriety of recognizing such right has often been questioned, and, if the question were a new one, might well be doubted"... See: *Angell v. Rosenbury, 12 Mich. 253 (1964)*.

Here, "the assignment is valid..., full, absolute"; and was executed by "MR. ROBINSON"--with the executive branch--to divest "the prisoner" of all "interest... in the *bond* and *mortgage*, and, "consequently of all right which at common law"... Department of Corrections might have had, "as mortgagee, to the possession of the mortgaged premises...

> "It is time that mortgages and mortgage controversies were stripped of 'legal-fiction'-- of all unnecessary legal technicality -- and that..."

This Court settles the rights of the parties; based on the real contract(s), in their TRUE substance and intent. See: *Dougherty, supra at 585, 589*.

MICHIGAN COURT OF APPEALS stated, as the applicable legal principle, that:

When two parties have made a contract, and, have expressed it in writing to which they have both assented as the complete and accurate integration of that contract; evidence, whether parol or otherwise, of antecedent understandings and negotiations, will not be admitted for the purposes of varying or contradicting the writing." *Nag Enters.*, supra at 410.

It is also important to emphasize that once the seal [Mich. Const. 1963, Art. III, § 3] was affixed -- at such time as "acknowledged" by said officer/notary for the executive branch; by operation of law the Governor, and, any and all other officers, agents, and instrumentalities of the executive branch were bound by its contract, See: *Schram*, supra at 207. In particular, after the record became "authenticated" by the "signature" of "Macomb County Clerk and Register of Deeds"... [Reference: MCL 440.9102 (1)(g) and MCL 440.3401 (2)].

## Authorities

"The substantive provisions of a contract, valid by the law of the State where the contract is made and is to be performed; *create a right of property...*, which, if transitory, follows the person and may be enforced wherever the person may be found. *No law can exist as such, except the law of the land; but it is a principle of every 'civilized' law, that, vested rights shall be protected.* The plaintiff owns

51

something, and we *help him get it.*"... *Zieberthal*, supra at 51. "So here, if the surety at the time of adjudication was... either the outright legal or equitable owner of this fund, or had an equitable lien or prior right to it; this property interest of the surety never became a part of the bankruptcy estate to be *administered.*"... *Pearlman*, supra at 136. "In *Wilkinson v. Powe*, 300 Mich. 275; 1 N.W.2d 539 (1942), the Supreme Court... found the defendant interferor liable for *procuring a breach of plaintiff's contract...* **In support of the verdict, the Court made the following comment:**

"The great weight of authority in this country, and in England, is to the effect that; if A has a legal contract with B, either for the rendition of services or any other purpose, and C, having knowledge of the existence thereof, intentionally and knowingly, and without reasonable justification or excuse, induces B to break the contract, by reason of which A sustains damages, an action will lie by A against C to recover the same. *The action of C is malicious, in that, with the knowledge of A's rights he intentionally and knowingly, and for unworthy or selfish purposes destroys them by inducing B to break his contract.*"... *Feldman v. Green*, 138 Mich. App. 374; 360 N.W.2d 889 (1984).

Therefore: Having not only done so, but, done so *maliciously*, with the theory of impunity in mind; defendants are (unequivocally) liable, and, (indubitably) culpable, for damages to the vessel and injury suffered by the estate.

"In this case, plaintiff alone has complained that... *based on principles of privity*, since he occupies a position of mutual agency and joint liability as to the loan and interest; repayment could ultimately be sought from him, it can only be concluded that he was a co-borrower of these funds... However..., such a principal-surety relationship exist..., only, after the partnership... failed to satisfy the debt, and; plaintiff is... to repay the loans himself.". See: *Nogueras, supra at 85.*

"The question of *bonding the county*.". of MACOMB for $100,000,000.00 ... 'for that' purpose was submitted...; to consider and determine the necessity of purchasing a... loan upon the bonds of said county..., upon request therefor in writing... The proper resolution was passed, determining the necessity..; the question of bonding the county..., and the proposition, adopted..; signed, and presented to the county... clerk in the manner... set forth". See: *Board of Supervisors of Wayne County v. Wayne Circuit Judges*, 106 Mich. 166 (Headnotes/Summary and Syllabus at 2-4); 64 N.W. 42 (1895)." The Joint Resolution, thus, must govern; if the bonds are, within its terms, 'obligations payable in money of the United States'.". See: *Guaranty Trust Co. v. Henwood*, 307 U.S. 254; 59 S.Ct. 852; 83 L.Ed 1275 (1939).

**III.** WITHOUT IMMEDIATE DECLARATORY AND INJUNCTIVE RELIEF AS BEING THE ONLY ADEQUATELY APPROPRIATE REMEDY AVAILABLE; THIS PLAINTIFF WILL CONTINUE TO BE CAUSED IRREPARABLE INJURY BY THE DEFENDANT PARTIES LAWLESS DISREGARD FOR THE OCTOBER 28TH, 2020 SECURITY AGREEMENT'S APPLICATION TO MDOC ADMINISTRATIVE PROCESSES AND OPERATIONS.

### Applicable Authorities

" When specific guarantees of the *Bill of Rights* are involved; this Court has taken special care to assure that... conduct in no way impermissibly infringes them"...{See: DONNELLY v. De CHRISTOFORO, 416 U.S. 643; 94 S.Ct. 1872; 40 L.Ed.2d 437 (1974)} " *Any forcible and compulsory extortion of a Man's own testimony*, **or of his private papers to be used as evidence... To forfeit his goods**, *is within the condemnation of... constitutional provisions for the security of person and property*... It is the duty of the courts to be watchful for for the constitutional rights of citizens, and against any stealthy encroachments thereon"... See: *Mapp v. Ohio, 367 U.S. 647; 81 S.Ct. 1688; 6 L.Ed.2d 1086 (1961)}* **"Now, in a question between principal and agent the instrument of agency is, as a matter of course, to be construed strictly against the agent**... The Constitution is but this instrument." {See: *Padelford, Fay & Co. v. Savannah, 14 Ga. 491 (1854)}* "A State acts by its legislative, it executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the State, or of the officers

or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws..." {See: *Ex parte Virginia*, 100 U.S. 347; 25 L.Ed. 680 (1879)}. "In determining whether an action taken by an administrative agency exceeded the scope of the authority granted to it by the legislature; a reviewing court must examine the enabling statute to determine whether the action taken... complies with the underlying legislative intent, and, whether the agency action is arbitrary and capricious." {See: *Pharris v. Michigan Secretary of State*, 117 Mich. App. 202; 323 N.W.2d 652 (1982)}. "The test Michigan courts apply when deciding whether to give preclusive effect to an agency's factual determination proceeds in two stages... The first stage... asks whether: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel"... {See: *Peterson v. Johnson*, 714 F.3d 914 (6TH Cir. Mich. 2013)}. "Under Administrative Procedures Act of 1969, agency's order will not be set aside as unlawful where plaintiffs have not shown prejudice to substantial right." {See: *Avon v. Michigan State Boundary Com.*, 96 Mich. App. 736; 293 N.W.2d 691 (1980)}. "The contours of a right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right...; that is to say that in the light of pre-existing law the unlawfulness must be apparent."... {Quoting from: *Gardenshire v. Schubert*, 205 F.3d 311 (6TH Cir. Tenn. 2000) (citations omitted)}. "Where that body, with whom is lodged the sovereign power to make a treaty of peace, makes such treaty in a constitutional manner; it is an act...

as to the purpose of repealing all former acts... to the contrary. It is an act of *the People*..., done by those who are constitutionally empowered to do it; and all acts opposed to that state of things introduced by the treaty, must cease, or each State may still treat as enemies those with whom the treaty directs a restoration of the rights of peace"... {See: *Executors of Cruden, supra* (hn./sum. 4)}" The mortgaged property is located in the United States...; enforcement of the trust security, collection of bonds and interest, employment of attorneys, institution of legal proceedings, distribution of assembled assets, were all responsibilities placed upon the trustee...; and obviously contemplate that any necessary judicial proceedings would be had in this country under the governing laws of the United States". {See: *Guaranty Trust Co., supra* 254.}" **Where discretionary powers of an administrative agency are abused; court has duty to issue injunctive restraint**". {See: *Hiers v. Brownell*, 376 Mich. 225; 136 N.W.2d 10(1965)}. "The constitutionality of... the 'subject of bankruptcies' was nothing less than 'the subject of the relations between an insolvent, or non·paying, or fraudulent debtor, and his creditors, extending to his and their relief'... {See: *Continental Illinois Nat'l Bank, supra* 673.}" Trustees who operate the business of a debtor are *bound* to abide by all state laws and regulations respecting the operation and use of the assets of such business... Thus, whether a trustee, receiver, or manager be appointed in a bankruptcy matter, or in some other kind of action or proceeding; the intent of Congress as expressed in 28 USC §959 operates to direct that such

persons, as officers of the court, are to comply with applicable state and local law while they carry on their activities". See: *In re Kish*, 41 B.R. 625-626 (Bankr. Mich. 1984)§

## Standards Applicable

"And probably their are few doctrines better established than that a surety who pays the debt... is entitled to all the rights of the person he paid to enforce his right to be reimbursed... A surety who had been compelled to complete a government contract, upon the contractor's default in performance, claimed that he was entitled... out of a fund that arose from ... the estimated value of the work done under the terms of the contract between the original contractor and the Government... *Pearlman, supra at 137.* "The question of whether the... bail bond... contract between the government, and, the principal and surety... constituted the final determination of a criminal case...; must be strictly construed in favor of the surety"... *United States v. Eisner,* 329 F.2d 410 (6th Cir. 1964) § Quoting, in pertinent part, from: *D'Anna, supra at 900, 901* § "Defendants drafted the employment agreement herein involved; and any ambiguity must be construed against them"... *Stark, supra at 548.* According to CL 1948, § 765.26... a surety who desires to be released from his burden of insuring

57

<u>his principals</u> appearance <u>may arrest... and deliver</u> <u>him into... the court...; and... object to his position</u> <u>as surety".</u> <u>Brandimore, supra at 681.</u> "Any person against whom the transfer of a security is wrongful for any reason...; may against anyone, except a bona fide purchaser, reclaim possession of the security, or obtain possession of any new security evidencing all or part of the same rights, or have damages." <u>E. F. Hutton & Co. v. Manufacturers Nat'l Bank, 259 F. Supp.</u> <u>520 (E.D. Mich. 1966).</u>

## *Discussion*

The undersigned *attorney-in-fact* is not merely a mouthpiece for his (insured) clients estate; this writer *cannot close his eyes* when the debtor's principals are *not acting in the best interests of the estate and its creditors,* and, *certainly cannot aid the adverse activity...* See: <u>In re Rusty Jones, Inc., 134 B.R. 321</u> <u>(Bankr. N.D. Ill. 1991).</u> Moreover, "Mr. Robinson" should never have been expected to know these (ongoing) transactions constituted *"unauthorized process"* [MCL 750.217c(7)(e)] from the outset. Albeit, this writer continues to become increasingly cognizant of how and why the divers *"professionals and attorneys",* ~~in privity of contract~~ with ~~their~~ MDOC commercial warehousing enterprise, work relentlessly (in corrupt-collusion) to stifle One's *protected conduct* exercised on behalf of the Debtor/Taxpayer estate; by virtue of signing *"unauthorized signatures"* [MCL 440.3403, et. seq.] to forcibly subjugate, both, this

58

writer (i.e. the *private principal*) and "the prisoner" (i.e. the *public principal*) to its (equally) increasing oppression and persecution -- through subversive, retaliatory, and *remarkably despotic* impositions of MDOC and *LARA ("depart.mental")* policy, procedure and rules of administration, WITHOUT DUE PROCESS.

## Authorities

"At most, the... plaintiff arranged for defendants to represent the insured client, and agreed to compensate defendants for that representation...; he represented the insured client not the insurance company". *Alanta Int'l Ins. Co. v. Bell*, 181, *supra* at 276. § See Also: *Alanta Int'l Ins. Co. v. Bell*, 438, *supra* at 533 (fn. 13)§ "Debtors and non-legal professionals are not expected to know that professionals cannot be paid without authorization...; the debtor's attorney has a duty to oversee the disposition of assets of the estate, to assure that the rights of debtor's creditors are protected" *In re Sky Valley*, *supra* at 939. "The account debtor is authorized to pay the assignor until the account debtor receives notice that the amount due, or to become due, has been assigned; and that payment is to be made to the assignee." *Old Kent Bank*, *supra* at 422." MCL 600.5855... provides as follows:

'If a person who is or may be liable for any

59

claim fraudulently conceals the existence of the claim, or the identity of the person who is liable for the claim, from the knowledge of the person entitled to sue on the claim; the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim, or the identity of the person who is liable for the claim, although the action would be otherwise barred". _Visioneering, Inc. Profit Sharing Trust v. Belle River Joint Venture_, 149 Mich. App. 334; 386 N.W.2d 189 (1986). "Under the circumstances plaintiff was not required to assume the risk of recovering adequate compensation for... damages, and... had the right to proceed under the contract and keep the property, and to recover damages in such amount as... proofs might justify". _Nowicki v. Podgorski_, 359 Mich. 24; 101 N.W.2d 375 (1960). "The trend of recent years must be corrected to refocus attention on the limitation 28 U.S.C. §959 draws around the power of the... courts. It is clearly outside the power of the court to allow an activity continued after filing in bankruptcy to ignore state or local law which all others in the same activity must comply with." _In re The Briercliff_, 15 B.R. 868 (Bank. Dist. N.J. 1981).

# CONCLUSION

Department of Corrections "War.Dens": "**Michael Burgess**", as well as "**C.King**" -- are "granted by statute general superintendence concerning matters of internal discipline" at their (respective) facility; as members of a "state administrative agency, the Department of Corrections"..., they are responsible for "making rules administering internal discipline at the prison"... See: <u>Parshay v. Warden of Marquette Prison, 30 Mich. App. 559; 186 N.W.2d 861 (1971).</u>

In such capacity: "The copies of plaintiff's promissory note and security agreement... were written... It thus appears that the submission of these documents... amounted to the bank's receipt of written notice of plaintiff's... interest in the collateral within the meaning of **MCL 440.9504(3)**," See: <u>Zuhellier, supra at 135</u>; and, gave the opposing parties proof of Plaintiff's "legal stand-ing... to courts for relief from acts of an administrative agency...", See: <u>Hendricks v. Police & Fire Dep't Civil Service Com., 85 Mich. App. 646; 272 N.W.2d 170 (1978).</u> In lieu of exercising "due diligence... routines for communicating significant information"..., See: <u>Old Kent Bank, supra</u>, these defendants -- by actions, inactions, words and conduct -- negligently gave their administrative and custodial employees, contractors, "actors", agents, assigns, and other, subordinates, designees or, operatives; a (tacit) "greenlight" to (**overtly**) violate, to wit: breach, (both) the collective (constitutional) trust charter, and, the individual's (private) agreements and contracts.

"The question of the validity of the Joint Resolution of June 5, 1933...", which pertains to the "FIDELITY BOND" filed and recorded as an essential component of the stipulated terms and conditions central to the October 28TH, 2020 Security Agreement in this matter; must be determined in light of these settled principles, but, the question necessarily relates, as well, to the contracts or obligations of States and municipalities, or of the political subdivisions, that is; to such engagements as are within the reach of the applicable national power. **The Governments' own contracts -- the obligations of the United States -- are in a distinct category, and, demand separate consideration.** See: Norman, supra at 306.

"In the surety *bond* situation, the surety merely makes a promise to 'make good' the bond after a judgment is entered"..., See: Johnson, supra; which is exactly what the Security Agreement does -- at the instance of default by the *principal*: Department of Corrections -- without regard for the MDOC's "implied obligation... to settle"... or, "the express terms of a particular policy"... See: Peter, supra at 1349." Every presumption is allowed in favor of a legal purpose, and; a contract will not be adjudged to be illegal, where it is capable of a construction which will uphold it and make it valid. It was competent, and proper, for the parties to ascertain and fix for themselves the amount of damages for the breach of a covenant not to compete, and, under the circumstances...; the provisions... are not against public policy, nor do they violate Michigan law". See: Roland, supra at 611; also: Papo, supra at 299.

Under the aegis of "continuing violations" by the MDOC Commercial Warehousing Enterprise this complaint alleges "Conspiracy Against Rights" [18 U.S.C. §241]; "Deprivation of Rights Under Color of Law" [18 U.S.C. §242], and "racketeering activity" evidenced by "unlawful debt" collection practices; whereas Defendant(s): Washington and C. King in particular -- by and through their co-business partners, employees, contractors, agents, assigns, actors, designees, and other such executive and administrative operatives among and within principal departments of the "State" executive branch -- by and through their final policy makers, are conducting "STATE OF MICHIGAN" business contrary to "State" law; via candid custom and policy to authorize, condone, tolerate, and approve unconstitutional conduct within the departmental jurisdiction of organization.

> "The Sixth Circuit recognizes two types of continuing violations: 'Those alleging serial violations, and those identified with a longstanding and demonstrable policy of discrimination... The continuing violations doctrine is a narrow exception to the statute of limitations rule... inherently designed to address systemic, policy-based discrimination or injury, and, discrimination claims are particularly suited to the exception.{Quoting, in pertinent part, from: Baker v. Mich. Dep't of Corr., at 15-16 (W.D. Mich. 2013)(citations omitted)}.

63

WHEREFORE: The "*United States person*" [26 U.S.C. § 7701 (a) (30)] -- as a cognizable "*Vessel of the United States*" [18 U.S.C. § 9] -- prays the Court:

1.) Grant a *PRELIMINARY INJUNCTION* -- in the nature of a "*restraining order*" -- enjoining the party opponents from enforcing any security interest, *against the debtor or third parties*, with respect to the collateral listed in the said Security Agreement (dated October 28TH, 2020), and, which precludes any and all use(s) of the taxpayer's tradename/commercial signature; except pursuant to an agreement with the undersigned Debtor and Secured Party, as any such enforcement or use would be in violation(s) of 18 U.S.C. §§ 241, 242.

2.) Issue a *DECLARATORY JUDGMENT* for referral of this matter to the *newly formed* (federal) "DEPARTMENT OF GOVERNMENTAL EFFICIENCY" (DOGE), to undertake or cause to be undertaken an investigation into "corruption, waste, fraud, and abuse"; as well as a referral to the "DEPARTMENT OF JUSTICE" (DOJ); in accordance with 42 U.S.C. § 14141; 42 U.S.C. § 2000d, et. seq.; and 42 U.S.C. § 3789d (c), or otherwise for federal investigation and recourse, respectively, in the context of "*racketeering activity*" and "*unlawful debt*" collection practices by the opposing parties; contrary to 18 U.S.C. § 1961 (1) and (6).

The Estate of "MR. ROBINSON" Further seeks:

3.) A full and complete forensic audit of the MDOC "prisoner" trust account, on both the public and private side of the ledger(s), with a detailed report of all parties interest in Bonds arising from proceeding on [sentencing date] January 9th, 2017; including the logistics information pertinent to all executory contracts, unexpired leases, and other contingency type levies, and, with respect to any other charges, debts, liens, and obligations of record involving, regarding, and affecting the estate at issue.

4.) An immediate formal decree enjoining MDOC to release any and all property secured as collateral in the October 28th, 2020 Security Agreement, with an award of restitution, and such other and further relief as is just and proper.

5.) Compensation paid to the estate of this writer, in the amount of a sum certain stipulated by the parties carefully articulated Security Agreement; reference page(s) "1 of 10 PUBLIC LAWFUL NOTICE", "2 of 10 FIDELITY BOND and INDEMNITY CLAUSE"; and "6 of 10 ADVISORY and DEFAULT", respectively, joint and several liability among the heretofore named defendants.

TO BE CLEAR: "Mr. Robinson" further seeks restitution, compensation, and such other relief and remedy as the Court finds just, proper, or appropriate against defendant parties -- both collectively with and individually without their jurisdiction of organization -- for any and all cognizable damage, injury, or loss; insofar as the said Security Agreement precluded the Defendant(s), as well as any other such persons as were and are subject to the juris-diction of "United States," from acting in a purported representative capacity to the Plaintiff's said Debtor/Taxpayer, and/or from signing any Signature(s) without this writer's express written consent, with respect to such Debtor/Taxpayer.

Most writers and commentator agree that forgery is 'the false making or material alteration, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability...; there must be a making of a false instrument for the purpose of creating another's liability. See: People v. Susalla, 392 Mich. 392; 220 N.W.2d 408 (1974). Under MCL 440.3403(3), a trial court may consider parole evidence in establishing personal liability, despite the fact that a promissory note had been signed in what appeared to be a representative capacity... See: Kroll v. Crest Plastics, Inc.; 142 Mich. App. 289; 369 N.W.2d 491 (1985). Mere use of an official title does not avoid personal liability in the absence of an express stipulation of such exemption, in the event of lack of trustee's authority to bind... See: Manufacturers' Fin. Corp. v. Estate of Andary, 269 Mich. 5; 256 N.W. 603 (1934).

# <u>Certificate of Acknowledgement</u>

Subject to United States Constitution, and, the Parties duly executed *Security Agreement* (dated October 28TH, 2020), inasmuch as collectively these are (in·deed) tantamount to the powers to legislate within the ten·by·ten miles square; all that is stated by said *Litigant/Beneficiary* is agreed to by said *Plaintiff--the Petitioner/Applicant*, that is, that the foregoing shall constitute *prima·facie* evidence of facts and truths in the matter; supported by the "**FIDELITY BOND**," well and truly made, for the re·lease and dis·charge of your Debtor, to the undersigned Secured Party Creditor, as heretofore stated.

No corrections having been made to the foregoing record -- at or during the time of its making by My own hand -- shall be construed to diminish or question its verity and/or authenticity; on the basis of mistakes attributed to "human error," in the documentation of this true, correct, and honest testimonial of the parties contract of agreement. I, Isaiah Steward Robinson (*Private Principal*) have personally appeared this day; as the *Primary Agent* with *Exclusive Power·of·Attorney·in·Fact*, being the *Sole Representative* authorized to sign a commercial signature for the tradename of the Debtor Company, ISAIAH STEWARD ROBINSON (*Public Principal*).

<u>The "State" is hereby estopped from asserting any rebuttal or defense in the matter, and, the real and interested parties agree that "Isaiah Steward Robinson" may proceed by private</u>

<u>suit or tort</u>. The law governing the agreement of the parties is the October 28TH, 2020 Security Agreement -- properly noticed on its face; as supported by the Rules of Commerce and Commercial Maxims of Law.

Any discrimination, prejudice, or injury caused by the "STATE" of MICHIGAN, a.k.a "State of Michigan" -- a statutory entity (MI), 28 U.S.C. § 3002 (13)(15)(A); MCL 440.9307(8) (location of debtor); and UCC 9-307(H) -- I, "Isaiah Steward Robinson", as presumed Surety (i.e. Fiduciary Trustee) to the insured vessel: "ISAIAH STEWARD ROBINSON #462832" -- the first party a Living Man the second a Legal Fiction -- agree to the said discrimination, prejudice, and injury; which includes damages caused by breaches, as set forth to be established (hereinabove) between the parties.

## Jurat

The undersigned has personally appeared before Me, an Officer of the "State" executive branch, to wit: a Notary Public; and is identified and known to be the sole authorized signor of the commercial signature/tradename, signed & executed this 7th day of the month March 2025 at Muskegon County, Michigan.

K TREPTOW
Notary Public, State of Michigan
County of Muskegon
My Commission Expires 01|13|2027
Acting in the County of Muskegon

_____
Notary Public /Witness Signature

Isaiah Steward Robinson
_____
Secured Party /Attorney-in-Fact
ALL-RIGHTS-RESERVED

FROM THE TRUE & ACTUAL LIFE ESTATE OF: ISAIAH STEWARD ROBINSON

TO: The Court/Judge; Clerk; and Opposing Parties:

This "COMMON LAW BILL OF COMPLAINT WITH JURY DEMAND" presents a CRIMINAL and CIVIL complaint in behalf of the above-indicated legal and commercial entity; with supporting documents/records and related instruments as follows:

1 - 78TH JUDICIAL District Court "BOND" Form (dated April 14TH, 2016).

2 - 78 JUDICIAL District Court "ADULT BIND OVER" Form (dated May 5TH, 2016).

3 - 78TH District Court "FELONY PLEA STATEMENT" (dated April 21ST, 2016)

4 - MICHIGAN DEPARTMENT OF CORRECTIONS Form(s) "CHJ-247A" (dated November 17TH, 2024); "DRAFT CSJ-247RJ"; and "Grievance Rejection Letter" (dated December 5TH, 2024).

5 - 27TH JUDICIAL Circuit Court "JUDGMENT OF SENTENCE COMMITMENT TO DEPARTMENT OF CORRECTIONS" (dated January 9TH, 2017).

6 - MICHIGAN DEPARTMENT OF CORRECTIONS Form "CAJ-140" (dated January 10TH 2017).

7 - Plaintiff's "Security Agreement", to wit: "NOTICE OF CLAIM" (dated October 28TH, 2020.

We trust that all paper here is in order, however, if there are any questions please do not hesitate to advise.

NOTE: Also included herewith is a 15-page "APPLICATION TO WAIVE SUSPEND AND/OR OFFSET FILING FEES AND OTHER COST" (i.e. Fidejussory Security).

I. S. Robinson (Attorney-in-Fact).

1 of 68

## FOR THE RECORD

Sender: **Isaiah Steward ROBINSON**
%

Re-mailed on:
April 9th, 2025
with notice of change
of temporary business
address

*Current Address:*

**MICHIGAN DEPARTMENT OF CORRECTIONS (MDOC),**
MDOC Commercial Tracking No. 462832,

**ALGER CORRECTIONAL FACILITY (LMF)**
N6141 Industrial Park Drive
Munising, MI 49862

---

Sent To:   United States District Court (Southern Div.)
Eastern District of Michigan
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd.
Detroit, Michigan 48226

Case No.

Judge:

Mag. Judge:

Filing: 68-page "COMMON LAW BILL OF COMPLAINT WITH JURY DEMAND" and supporting documents. (88-pages total).

## PROOF OF SERVICE

I, Isaiah Steward Robinson, hereby assert that a complete copy of this entire record --simultaneously filed herein this venue-- is also being mailed to the State B.A.R. of Michigan, at:

MICHAEL FRANCK BUILDING
306 Townsend Street
Lansing, MI 48933
Tel. # (800) 968-1442

Isaiah S. Robinson          3/12/2025
Litigant / Attorney-in-Fact / Agent

2



FROM: *Isaiah Steward Robinson (Sui Juris Creditor)*
*On Behalf of : ISAIAH STEWARD ROBINSON (Ens Legis-Debtor)*
c/o

ALGER CORRECTIONAL FACILITY
N6141 Industrial Park Drive
Munising, MI 49862

$ 012.65⁰

RECEIVED
APR 15 2025
CLERK'S OFFICE
U.S. DISTRICT COURT