UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ISAIAH ROBINSON #462832,                     Case No. 2:25-cv-00101

        Plaintiff,                          Hon. Robert J. Jonker
                                             U.S. District Judge

  v.

DANA NESSEL, et al.,

        Defendants
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

*Pro se* Plaintiff – state prisoner Isaiah Steward Robinson – filed a civil complaint against 25 Defendants on April 15, 2025. (ECF No. 1.)

Defendants named in the complaint include, first, Michigan Attorney General Dana Nessel and Attorneys Prysock, Springstead, and Monton. Plaintiff also sues the following Michigan Department of Corrections (MDOC) employees: Director Heidi Washington, Jennings, Amos-Warchock, Heap, Burges, King, Derwin, Johnson, Page, Miller, Fager, Calkins, Christopher, Moore, Glines, Lo, Reed, Goulet, Streit, Chauvez, and Robart. (*Id*.)

The events alleged in the complaint occurred while Plaintiff was confined at the Alger Correctional Facility (LMF).

Plaintiff's complaint is a rambling document that is largely unintelligible. Plaintiff strings together legal terms and cites case law and statutes, but he does not

logically explain the claims that he intends to assert against each Defendant.[1]  In general, Plaintiff's complaint falls far short of what is required to state a plausible claim for relief.  "A pleading that states a claim for relief must contain" among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a), (a)(2).  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  A plaintiff must plead a claim with clarity and provide a defendant with fair notice of the claim and grounds upon which it rests.  *Kensu v. Corizon, Inc.*, 5 Fed.4th, 646, 650 (6th Cir. 2021).  "The district court and defendants should not have to 'fish a gold coin from a bucket of mud' to identify the allegations really at issue."  *Id.* at 651 (citation omitted).

Liberally construing Plaintiff's complaint, it appears that Plaintiff is asserting three categories of complaints against Defendants.

1) Plaintiff may be challenging his Newaygo County conviction and sentence;

2) Plaintiff appears to assert that he was wrongfully denied parole at his earliest release date; and

3) Plaintiff alleges that while confined in the Alger Correctional Facility, he was given several false misconduct tickets.

On  September 3, 2025, Plaintiff was granted *in forma pauperis* status. (ECF No. 15.) For the reasons that follow, it is respectfully recommended that Court dismiss Plaintiff's complaint.

---

[1]    Plaintiff also filed an additional document he says is a "complaint for habeas corpus relief" and an "action for mandamus." (ECF No. 13.)

## II. Factual Allegations

Plaintiff first asserts that his criminal conviction and sentence in the Newaygo County Circuit Court are invalid.  (*Id.*, PageID.4-5 )  Plaintiff states that the trial court acknowledged that the case would fail if there was no probable cause for arrest. (*Id.*, PageID.5.)  Plaintiff says that the members of the State Bar necessarily know this and "that knowledge is imputed to the principal."  (*Id.*, PageID.5.)  Plaintiff claims that the "Attorney General is left without standards to determine when to admit bail and when to detain."  (*Id.*)

Further, Plaintiff claims that "Isaiah Steward Robinson' (Sui Juris Complaining Witness) d/b/a 'Isaiah Steward Robinson' (Ens Legis Complainant), collectively, as undersigner(s) interchangeably convening this matter in the capacity of Third Party Interpleader; hereby intervenes pursuant to 28 U.S.C. 1331 and Fed. Rules Civ. Proc. R  24(a)." (*Id.*, PageID.6.)  Plaintiff says that "Complainant's tradename was stolen and - -  by pretentious use of its commercial  signature . . . . is being surreptitiously exploited; to satisfy a confuted 'letter of credit right . . . . issued to an abstracted 'offender' . . . . that is, in the name of a fictitious 'prisoner' commonly being referred to as 'inmate Robinson #462832' and/or 'Prisoner Robinson #462832." (*Id.*, PageID.7.) Plaintiff alleges these issues allow for the "unlawful conversions of the Complainant's property." (*Id.*)

Plaintiff further explains that his April 13, 2016, arrest was unconstitutional and without cause.  (*Id.*, PageID.8.)  Plaintiff says that he rejected a plea offer of 24 months imprisonment due to "malice, fraud, and other corrupt conduct" by Defendant

attorneys Prysock, Springstead, and Monton.   Plaintiff ultimately received the maximum sentence of 4 to 15 years imprisonment with an earliest date of release of October 25, 2020.  (*Id.*, PageID.9.)  Although unclear, it appears that Plaintiff is complaining that he did not receive parole after serving his minimum sentence, and he blames Defendants Jennings, Warchock, and Heap.  (*Id.*)

Three days after his earliest release date, Plaintiff asserts that "certain agents" of the MDOC "caused a (10) page 'Security Agreement', to wit: a private 'Indemnity Contract of Insurance' to be executed for the release and discharge (i.e. 'parole')."  (*Id.*)  Plaintiff says that this "release and discharge was later "signed" and "authenticated" with such consent of the 'County of Macomb' agency – in the office of "Macomb County Clerk and Register of Deeds' – on June 27, 2022" and filed and recorded in Newaygo County. (*Id.*, PageID.10.)  Plaintiff says this was sent to Defendants MDOC Director Washington and Parole Board member Warchock, with copies mailed to Defendants Burgess and King. (*Id.*)

Plaintiff asserts that the prisoner misconduct process requires more scrutiny to prevent false misconduct tickets that suppress protected conduct. (*Id.*, PageID.11.) Plaintiff says that false misconduct tickets are issued to justify the denial of parole. (*Id.*) Plaintiff says that he is confined in secluded conditions "often bordering on squalid and consistently retaliatory" due to misconduct tickets issued without due process. (*Id.*)

Plaintiff says that more than four years have passed since the "discharge and release" was executed and he is still confined in prison. (*Id.*, PageID.12.) He alleges

4

that he is being "willfully, maliciously, and without legal authority secretly confine[d] and imprison[ed]." (*Id*.)

Plaintiff says that on November 13, he submitted a grievance on Defendant Derwin for moving him from a bottom bunk to a top bunk despite safety concerns. (*Id*., PageID.16.) Plaintiff says that the next day, he made an oral grievance to Defendant Classification Director Johnson and hand-delivered a copy of the Security Agreement "with  respect to the (private) 'Indemnity Contract of Insurance' embodied by the language carefully articulated within the October 28th, 2020, deed and covenant at issue here."  (*Id*., PageID.17.)  Plaintiff cautioned Defendant Johnson from using Plaintiff's trademark or commercial signature, despite being advised against the "use of the name".  (*Id*., PageID.17-18.)

Plaintiff says that on November 18, 2024, he prepared a grievance and attached the Security Agreement. (*Id*., PageID.18.)  On November 20, 2024, Plaintiff met with Defendant Fager in the Alger Facility Control Center.  (*Id*., PageID.19.) Fager told Plaintiff that the "Security Agreement is 'Horseshit that means nothing.'" (*Id*., PageID.19.)

Thereafter, Plaintiff complains that he received false retaliatory misconduct tickets from Defendants Calkins and Moore.  (*Id*., PageID.20.)  Plaintiff alleges that after he grieved Defendant Calkins and met with Defendant Fager, Defendant Calkins retaliated by "forging and falsifying" a misconduct ticket.  (*Id*.)  Defendant Calkins issued two misconducts for violating a posted rule.  (*Id*., PageID.20-22.) Calkins issued the misconduct ticket because Plaintiff's locker was left open, blocking

the officer's view of both inmates' bunks.  (*Id.*, PageID.20.)  Plaintiff says that Calkins

knew that Plaintiff had been issued the bottom bunk – not the top bunk – while he

was in cell 24, and the that the open locker did not belong to him.  (*Id.*, PageID.21.)

Plaintiff alleges that Defendants Christopher and Moore reviewed the first

misconduct ticket and became complicit in Calkin's actions.   (*Id.*, PageID.21-22.)

Plaintiff further alleges that Defendants Hill and Wakefield "aggressively accosted"

him while reviewing the second misconduct ticket.  (*Id.*, PageID.22.)

Plaintiff equates the misconduct ticket with a "commercial instrument and

further attempts to explain why this is improper under the "Security Agreement."

(*Id.*, PageID.23.)  Plaintiff says:

> To Be Clear:  Complainant's October 28th, 2020 Security Agreement – by
> the operation of law – devested Michigan Department of Corrections of
> any lawful authority to act in a representative capacity to the estate of
> "MR. ROBINSON", and, in particular precludes the Defendant(s) from
> enforcing any security interests(s) laying outside the scope of terms and
> conditions stipulated by execution and acknowledgment of the deed.

(*Id.*, PageID.23.) Plaintiff further says that between November 13, 2024, and

February 8, 2025, security agreements have been falsified and forged by Defendants

Gines, Lo, Reed, Goulet, Streit, Chauvez, and Robart.  (*Id.*, PageID.24.)  Plaintiff says

that he discussed these false and forged misconduct tickets  with Defendants Derwin,

Messer, Goulet, and Moore. Plaintiff says that Defendant Derwin took no action to

investigate. (*Id.*) Plaintiff unsuccessfully attempted to "seek verbal reprimand for the

most recent falsification and forgery of a counterfeit security" issued by Defendant Lo

by complaining to Defendant Goulet. (*Id.*)

Plaintiff asserts that the MDOC breached a contract with the Newaygo County

Circuit Court, and Plaintiff is a third-party beneficiary of the contract. (*Id.*, PageID.27-30.)

It appears that Plaintiff is asserting that the MDOC failed to release him on his earliest release date, and that is the breach of contract. (*Id.*, PageID.29-30.)  In other words, Plaintiff argues that he should have been paroled at his earliest release date, and the failure to place him on parole status breached a contract with the sentencing Court. (*Id.*, PageID.27-51.)  He further equates his criminal sentence to a "mortgage agreement" and ties the Security Agreement that he refers to throughout his complaint to the failure to place him on parole status. (*Id.*, PageID.33-34.)

Plaintiff requests immediate declaratory and injunctive relief. (*Id.*, PageID.52.) Plaintiff says that Wardens Burgess and King are responsible for enforcing rules and  administering internal discipline in the prison. (*Id.*, PageID.59.) Plaintiff claims that Defendants Washington and King are involved in racketeering and debt collection practices. (*Id.*, PageID.61.)

Plaintiff requests a restraining order enjoining Defendants from enforcing a security interest with respect to collateral listed in the Security Agreement dated October 28, 2020, and the preclusion of using "the taxpayer's tradename/commercial signature." (*Id.*, PageID.62.) Plaintiff further requests a declaratory judgment and referrals to the Department of Government Efficiency and the Justice Department for an investigation into the corruption and waste. (*Id.*)  Plaintiff requests an audit of the MDOC prisoner trust account, an immediate decree enjoining the MDOC from releasing all property secured as collateral in the Security Agreement, and

compensation paid to Plaintiff's estate as stipulated in the Security Agreement.  (*Id.*, PageID.63-64.)

### III. Standard of Law

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any action brought *in forma pauperis* if the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief.

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.* The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the plausibility standard is not equivalent to a "probability requirement, . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

In addition, the Court must read Plaintiff's *pro se* complaint indulgently, see *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true,

unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

### IV.    Analysis

As a starting point, to the extent that Plaintiff is challenging his Newaygo County conviction and sentence and his incarceration by the State of Michigan, his claim is barred.  A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed.  *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23–24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

Moreover, to the extent Plaintiff seeks injunctive, declaratory, and monetary relief for alleged violations of Constitutional rights, his claim is barred by *Heck*, 512 U.S. at 486–87, which held that "in order to recover damages for allegedly

unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original).  In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief.  *See Edwards*, 520 U.S. at 646–48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189–90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief). Plaintiff's allegations call into question the validity of his conviction and imprisonment. Therefore, those allegations would be barred under *Heck* until his criminal conviction has been invalidated. Accordingly, it is recommended that the Court dismiss Plaintiff's claims against Defendants Attorney General Nessel, and attorneys Prysock, Springstead, and Monton (the State Bar of Michigan Defendants).

Plaintiff alleges that he was wrongfully denied parole at his earliest release date. Plaintiff has no liberty interest in being released on parole, because there is no

constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release.  *Id.* at 7; *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. *See also Ward v. Stegall*, No. 03-1804, 2004 WL 614581 (6th Cir. March 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at \*1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at \*2 (6th Cir. Feb. 14, 2001).  Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Michigan Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).  Accordingly, it is recommended that the Court dismiss Plaintiff's claim that he was entitled to parole at his earliest release date, because without a liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights.  *See Sweeton*, 27 F.3d at 1164-65.[2]

---

[2]    Nor can Plaintiff establish that he has a contract right to parole arising out of his asserted "Security Agreement" or due to an alleged contractual agreement he asserts exists between the MDOC and the Newaygo County Circuit Court.

Similarly, Plaintiff has asserted no actionable due process violations related to his misconduct tickets.  The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claim involves two steps:  "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff has failed to allege how his misconduct tickets have affected his interests. The sanctions imposed for misconducts in the prison do not fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. Plaintiff made a general allegation that misconduct tickets affect his parole, but a prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction.  Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2).  It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation" due to any misconduct ticket that he received. Plaintiff makes a general allegation that he is confined in poor conditions due to the number of misconduct tickets that he has received.  However, confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010).

Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest). In the opinion of the undersigned, Plaintiff

has failed to set forth a due process violation based upon the misconduct tickets that he has received.

Plaintiff alleges that he received misconduct tickets that were retaliatory. Plaintiff says that he submitted a grievance on November 13, 2024, after Defendant Derwin moved him to a top bunk. (ECF No. 1, PageID.16.)  Plaintiff asserts that he then prepared a grievance on November 18, 2024, and attached the "Security Agreement." (*Id*., PageID.18.)  Plaintiff states that he subsequently received false retaliatory misconduct tickets from Defendant Calkins for leaving his locker door open to obscure the officers' view of his bunk in violation of posted rules. (*Id*., PageID.20.)  Further, Plaintiff alleges that Defendants Fager, Christopher, and Moore reviewed the tickets with him and Defendants Hill and Wakefield "aggressively accosted him" while reviewing the second misconduct ticket. (*Id*., PageID.21-22.)  Plaintiff claims that Defendants Gines, Lo, Reed, Goulet, Streit, Chauvez, and Robart "falsified and forged" "security agreements". (ECF No. 1, PageID.23.)  Plaintiff says that he discussed these false misconduct tickets with Defendants Derwin, Messer, Goulet, and Moore, but Defendant Derwin took no action to investigate. (*Id*.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from

engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Moreover, in some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th

16

Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation.  He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct.  He merely concludes that because he filed some grievances within a few days, weeks or months before Defendants' actions, their actions must have been motivated by his grievances.  The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010).  This is especially true where plaintiff is a prolific filer of grievances.  *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").  Plaintiff merely alleges temporal proximity between Defendants' conduct and his many grievances and complaints. Such allegations are insufficient to state a retaliation claim.

Finally, Plaintiff's assertions that Defendants Hill and Wakefield "aggressively accosted" him while reviewing a misconduct ticket with him, that Defendant Derwin failed to investigate his retaliation claims, and that other Defendants took no action when he complained about receiving false retaliatory misconducts are nothing more than bare conclusory allegations.  Conclusory

allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Plaintiff fails to allege that Defendants Washington, Amos-Warchock, Burgess, King, Johnson, Miller, Christopher, and Glines took any action against him. At best, Plaintiff suggests that supervisory Defendants failed to adequately supervise their subordinates or respond to Plaintiff's grievances and complaints. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the
> offending individual is not actionable *unless* the supervisor either
> encouraged the specific incident of misconduct or in some other way
> directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added)
> (internal quotation marks omitted). We have interpreted this standard
> to mean that "at a minimum," the plaintiff must show that the
> defendant "at least implicitly authorized, approved, or knowingly
> acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199

F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see*

*also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*,

423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.

1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v.*

*Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Washington, Amos-

Warchock, Burgess, King, Johnson, Miller, Christopher, and Glines encouraged or

condoned the conduct of their subordinates, or authorized, approved or knowingly

acquiesced in the conduct.  His vague and conclusory allegations of supervisory

responsibility are insufficient to demonstrate that Defendants Washington, Amos-

Warchock, Burgess, King, Johnson, Miller, Christopher, and Glines were personally

involved in the events surrounding Plaintiff's reclassification to administrative

segregation.

## V.   Recommendation

Accordingly, the undersigned respectfully recommends that the Court dismiss

the complaint under 28 U.S.C. § 1915(e)(2)(B) because it is frivolous and fails to state

a claim upon which relief may be granted.

Dated:   September 3, 2025

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).